# ZOILO IBANEZ DE ALDECOA Y PALET ET AL. *v.* HONGKONG · & SHANGHAI BANKING COR-PORATION ET AL.

## APPEAL FROM THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 230.   Argued March 20, 21, 1918.—Decided April 29, 1918.

As to cases existing at the time of its enactment, the Philippine Code of Civil Procedure did not displace the system of parental control and usufructuary interest defined by the Civil Code, respecting the property of minor children. *Held,* therefore, that the right of a parent to emancipate minor children and thus endow them with capacity to make a valid mortgage of their real estate persisted notwithstanding the Code of Civil Procedure.

Section 581 of the Code of Civil Procedure, providing that "all proceedings in cases of guardianship pending ⋮ . . . at the time of the passage of this Act, shall proceed in accordance with the existing Spanish procedure under which the guardians were appointed," is construed broadly as relating not merely to court proceedings, but as expressly preserving existing powers and usufructuary rights of parents over the property of minor children, existing under the Civil Code.

30 Phil. Rep. 228, affirmed.

THE case is stated in the opinion.

*Mr. Antonio M. Opisso* for appellants.

*Mr. C. C. Tucker,* with whom *Mr. Alexander Britton, Mr. Evans Browne* and *Mr. F. C. Fisher* were on the briefs, for appellees.

MR. JUSTICE McKENNA delivered the opinion of the court.

Suit by appellants Joaquin Ibanez de Aldecoa and Zoilo Ibanez de Aldecoa, brought in the Court of First

Instance of Manila, to have declared null and void a mortgage executed by them in favor of appellees on the ground that when they executed the mortgage they were unemancipated minors.

After some preliminary procedure and upon answer filed and hearing had, the Court of First Instance dismissed the suit as to Joaquin Ibanez but granted relief in favor of Zoilo Ibanez. Upon appeal the Supreme Court of the Philippine Islands affirmed the judgment so far as it sustained the validity of the mortgage as to Joaquin Ibanez and reversed the judgment so far as it declared the nullity of the mortgage as to Zoilo Ibanez, and declared the mortgage binding upon the latter; that is, declared the mortgage valid as to both. This appeal was then prosecuted.

The facts are not in dispute. The appellants were born in the Islands, their parents being natives of Spain. Their father's domicile was in Manila, where he died October 4, 1895. After his death the firm of Aldecoa and Company, of which he had been a regular member, was reorganized and his widow became one of the general or "capitalistic" partners of the firm and she appeared as such in the articles of partnership.

On July 31, 1903, the mother of the appellants, they then being over the age of eighteen years, went before a notary public and executed two instruments wherein and whereby she emancipated them with their consent.

No guardian of the person or property of appellants has ever been applied for or appointed under the Code of Civil Procedure of the Islands since its promulgation; instead appellants had continued from the death of their father under the custody of their mother until the execution of the instruments of emancipation.

February 23, 1906, the firm of Aldecoa and Company was heavily indebted to the appellee bank and the bank was pressing for payment or security. In consequence

the mortgage, which is the subject of this suit, was executed February 23, 1906. On December 31, 1906, the firm expired by limitation and went into liquidation.

The question presented is whether the mother of appellants could legally emancipate them and thus confer upon them capacity to execute a valid mortgage of their real property, they consenting. The solution of the question, the Supreme Court said, "involves an inquiry as to the effect of the provisions of the New Code of Civil Procedure relating to guardianship upon certain provisions of the Civil Code relating to the control by parents over the persons and property of their minor children."

In other words, the question in the case turns upon the accommodation or conflict between certain provisions of the Civil Code and certain provisions of the Code of Civil Procedure, the latter being later in enactment. If its provisions did not repeal or supersede the provisions of the other, the mother of appellants had power to emancipate them and their mortgage was a valid instrument. On this question the courts below are in dissonance. The Court of First Instance considered that the codes were irreconcilable and gave a repealing strength to the Code of Civil Procedure. The Supreme Court rejected this conclusion and gave accommodation to the provisions of the codes by excluding those of the Code of Civil Procedure from operation upon parents who had assumed charge of the property of their minor children and were enjoying its usufruct prior to the adoption of that code. In other words, the rights and duties of such parents with respect to their children, including the right of emancipation, continued to be regulated by the Civil Code.

The court deduced this conclusion from the explicit language of the Civil Code conferring parental authority, the absence of a repealing, or modifying or superseding word in the Code of Civil Procedure, and the declaration of the latter that guardianships pending at the time of its

passage should "proceed in accordance with Spanish law," with certain exceptions, which emphasized the declaration. The declaration is important and we therefore quote it. It is § 581 and is as follows: "Pending guardianships to proceed in accordance with Spanish law, with certain exceptions. All proceedings in cases of guardianship pending in the Philippine Islands at the time of the passage of this Act, shall proceed in accordance with the existing Spanish procedure under which the guardians were appointed; *Provided, nevertheless,* That any guardian appointed under existing Spanish law may be removed in accordance with the provisions of section 574 of this Act, and his successor may be appointed as therein provided, and every successor to a guardian so removed shall, in the administration of the person or estate, or either, as the case may be, of his ward, be governed by the provisions of this Act."

The construction by the Supreme Court is vigorously assailed by appellants. It was so assailed in the Supreme Court and the court answered it and other contentions of appellants by a discussion at once minute and comprehensive. It is not possible to reproduce it or even epitomize it. Its basis is the customs and habits of a people with resulting rights which found expression and sanction in the Civil Code and of which there is no repeal, it was held, or displacement in the Code of Civil Procedure. And the abruptness of the change and disorder of rights which the contentions of appellants involve the court felt and declared.

The change, if change there was, was certainly abrupt and quite radical. Under the Civil Code parents had general control over the property of their children. "The father, or, in his absence, the mother, is the legal administrator of the property of the children who are under their authority" (§ 159), and by subsequent sections a usufruct in the property was given to the parents. "Fil-

iation," the court said, "stood in lieu of those legal safe-guards" with which the "Code of Civil Procedure envelops the property of a minor child." And the court pointed out that there were certain restrictions upon the parent but they "did not make the parent a guardian." It was further held that the Civil Code drew a sharp and clearly distinguishable line between guardianship properly so-called, and the *patria potestas,* or parental authority, and confined the former to guardianship contained in article 199 of that code which defined it as "the custody of the person and property or only of the property of those who, not being under the parental authority, are incapable of taking care of themselves."

It was upon these considerations that the court based its judgment, and if it be granted there are counter considerations of strength we are disposed to defer to the tribunal "on the spot." It has support in the principles of our jurisprudence which are repellent to retrospective operation of a law and the repeal by implication of one law by another. These principles have urgency in the present case. The change contended for is not only abrupt but fundamental. It is not change of procedure merely but of systems, disturbing rights, devesting or imposing obligations. Indeed, the present case is an example. The mother of appellants, in confidence of her right to do so, emancipated the appellants, and the appellees in equal confidence accepted it as legal, and that many are in like situation under like confidences may be conjectured.

It is in effect urged, however, that such disorder was foreseen and accepted as a consequence of existing laws which the legislators with ability and care made a study of, and, "finding the law of guardianship and the law of parental authority, as they stood then, repugnant to the American idea of justice, 'ruthlessly brushed aside' the old order and inaugurated 'the new in the form which had

withstood the test of time in the United States.'" In other words, displaced the parental authority and all that it meant of power of administration and enjoyment by the parents of the estates of their minor children.

We concede the care and ability of the legislators but deduce a conclusion different from that of counsel. We are convinced that neither would have been exercised to displace abruptly a system so fixed in the habits and sentiments of a people as parental authority was. in the habits of the Islands, and certainly not without explicit declaration, and leave without warning so radical and important a change to be collected from disputable. implications. We concur, therefore, with the Supreme Court that § 581, *supra,* was intended to save "from the operation of the new act all proceedings in cases of guardianship pending in the Philippine Islands at the time of its passage." And guardianship and the administration of an estate did not mean, as contended by appellants, something procedural in a court, but they meant what the laws recognized as such and, we have seen, § 159 of the Civil Code provides that "the father, or, in his absence, the mother, is the legal administrator of the property of the children who are under their authority." The right is a valuable one and it has as an incident a right as valuable, the usufruct of the estate administered.

The value and extent of both rights this court has had occasion to declare in *Darlington* v. *Turner,* 202 U. S. 195, 230, *et seq.,* and in view of that case we are forced to think that, however our habits may induce us to approve the American system of the relation of parent and child and that there should be interposed between them when property interests are involved the order of a court and the security of bonds, there are other peoples—including a State of this Union—who have found that they could rely with confidence on other than material considerations for the performance of duty and that "filiation"

could stand in lieu of "those legal safeguards" with which the new code of procedure "envelops the property of a minor child."

There are other contentions of appellants which are either mixed with questions of fact or depend upon an appreciation of local matters and procedure the decision of the local court upon which we accept.

*Judgment affirmed.*