### SUN SHIPBUILDING & DRY DOCK COMPANY

v.

**Lawrence S. BOWMAN, Deputy Commissioner, United States Department of Labor, Office of Workmen's Compensation Programs, Third Compensation District.**

Civ. A. No. 72–2325.

United States District Court,
E. D. Pennsylvania.

Jan. 25, 1974.

**366**

John J. Runzer, Philadelphia, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., Frank J. Bove, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION

BECHTLE, District Judge.

This matter is before the Court on cross-motions for summary judgment in an action brought by Sun Shipbuilding & Dry Dock Company ("Sun")[1] to set aside a compensation order of the Deputy Commissioner for the Third Compensation District and to require him to order Jasper Avery, a former employee of Sun, and his attorney to return all amounts paid to them pursuant to the compensation order filed on November 14, 1972, in Avery's favor. The order was made under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., prior to its being amended on October 27, 1972. The amendments were effective thirty days later. This action was filed November 22, 1972.

Sun's principal contention is that Avery's claim is barred by the Act because Sun was not given written notice of his "injury" within thirty days after the date it was incurred and his claim was not filed within one year of that date.

From 1964 to November 5, 1970, Avery was steadily employed as a riveter and chipper in Sun's shipyard.[2] He left that employer on the last mentioned date for reasons other than impairment of his hearing. He filed his compensation claim on August 4, 1971, for alleged occupational-related loss of hearing. No compensation was paid Avery for loss of hearing except in accordance with the award now being questioned in this action.

As a basis for the award, the Deputy Commissioner found that Avery suffered a 40% loss of hearing,[3] that the loss was employment related, that he did not give notice of his "injury" within thirty days, that Sun had knowledge of Avery's hearing loss, that riveting and chipping caused the hearing loss and, therefore, Sun was not prejudiced by the lack of timely notice, that for the purpose of the award the date of injury was the last day worked by him at Sun's shipyard, and that, accordingly, the

---

1. Sun is self-insured.

2. Actually, Avery started to work for Sun back in 1943 for eleven days. He also worked for that company in 1961 for nine months; in 1962 for ten and one-half months; 1963 for six and one-half months, and in 1964 for seven months. Subsequent to 1961, he worked for no other employer than Sun. Prior to 1943, he worked for three other shipyards at various intervals as a riveter and chipper and for a short time as a press operator with the Budd Company.

3. Section 2(2) of the Act, 33 U.S.C. § 902(2), sets forth in part: "The term 'injury' means . . . such occupational disease . . . as arises naturally out of such employment or as. naturally or unavoidably results from such accidental injury . . . .".

claim was timely filed within the one-year limitation period.

Section 12(a) of the Act, 33 U.S.C. § 912(a), requires that notice [4] of an "injury" for which compensation is payable shall be given to the Deputy Commissioner and to the employer within thirty days after the date of such injury. However, subsection (d) of this section states that the failure to give such notice shall not bar any claim if (1) the employer had knowledge of the injury, and (2) the Deputy Commissioner determines that the employer has not been prejudiced by the failure to give such notice.

The Act contains a one-year limitation period for the filing of claims. Section 13(a), 33 U.S.C. § 913(a), bars the right of recovery for compensation unless the employee's claim is filed within one year of the injury. Regarding the duty of the employer to file a report of an injury set forth in § 30(a) of the Act, 33 U.S.C. § 930(a), subsection (f) of § 30 states that whenever the employer has knowledge of any injury of an employee and fails, neglects, or refuses to file a report thereof, the one-year limitation period shall not begin to run against the claim of the injured employee until such report shall have been furnished.

## I.

Prior to October 27, 1972, when the Compensation Act was extensively amended, the test for ascertaining the date of injury in the case of an occupational disease was court-established from a realistic interpretation of the Act. That test required the Deputy Commissioner to determine when the claimant knew or should have known that he has suffered a disability which was caused

by or arose out of his employment.[5] See, Urie v. Thompson, 337 U.S. 163, 170, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), a case involving silicosis and the statute of limitations, 45 U.S.C. § 56, under Federal Employers' Liability Act ("FELA"). Also see, Travelers Insurance Company v. Cardillo, 225 F.2d 137, 142 (2nd Cir. 1955), cert. denied sub nom., Ira S. Bushey & Sons, Inc. v. Cardillo, 350 U.S. 913, 76 S.Ct. 196, 100 L. Ed. 800; Aerojet-General Shipyards, Inc. v. O'Keeffe, 413 F.2d 793, 795 (5th Cir. 1969); Stancil v. Massey, 141 U.S. App.D.C. 120, 436 F.2d 274, 277 (1970); Associates Indemnity Corporation v. Shea, 455 F.2d 913, 915 (5th Cir. 1972). Thus, for timing purposes, the term "injury" is not the same as "accident" or "disability." It has component parts. One of them is the state of mind or an awareness of certain facts by the victim. The special rule for timeliness in occupational disease cases reflects the realization that such diseases manifest themselves gradually and there can be an advanced degree of disability before the victim is ever aware of the disease.

■ Hearing loss caused by long exposure to injurious noise is considered an occupational disease. Such loss is particularly insidious and often cannot be pinpointed as occurring at a given time, because the victim does not become aware of the cumulative effect of the loss until it is in an advanced state, such as not being able to hear the radio unless the volume is turned up high. See, Travelers Insurance Company v. Cardillo, *supra*.

■ Section 21(b) of the Act, 33 U. S.C. § 921(b), prior to October 27, 1972, though permitting judicial suspension or setting aside of a compensation order in an appropriate Federal District Court, is

---

4. Section 12(b), 33 U.S.C. § 912(b), provides that the notice shall be in writing and shall contain a statement of the time, place, nature, and cause of the injury.

5. Section 13(a) of the Act, 33 U.S.C. § 913(a), has been amended to provide: "The time for filing a claim shall not begin to run until the employee . . . is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury . . . and the employment." 86 Stat. 1259 (1972).

silent regarding the scope of review.[6] Such standard is, therefore, governed by § 701 of the Judicial Review Act, 5 U.S. C. § 701. O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 508, 71 S.Ct. 470, 95 L.Ed. 483 (1951); Charlton v. United States, 412 F.2d 390 (3rd Cir. 1969). This Court may set aside the findings of the Deputy Commissioner if they are unsupported by substantial evidence on the record as a whole. See, § 706(2)(E) of that Act, and Young & Company v. Shea, 404 F.2d 1059 (5th Cir. 1968).

The record before the Deputy Commissioner reveals that Avery was experiencing difficulty with his hearing the last three to four years of his employment at Sun. At the hearing on June 15, 1971, in answer to the question by the attorney for Sun as to when he first knew that he had something wrong with his hearing, Avery answered:

"A. Don't happen overnight. I went to a doctor. Several times I thought there may be an accumulation of wax or something. I went to the family doctor [in 1967], and he checked it out. I said I couldn't hear the television and a ringing all the time. He checked it out and said, 'No accumulation of wax.' He said there isn't anything he could do for me.

. . . . . .

"Q. How long had you had problems with your hearing before you went to the doctor in 1967?

"A. Like I say, it started getting worse and worse. Then it started to ring all the time, you know, and I started wearing cotton in them and earplugs and what not and that didn't help.

"Q. When did you start wearing cotton and earplugs?

"A. I would say for the last three, four years.

"Q. The last three or four years you were working at Sun?

"A. Yes.

"Q. Why did you wear cotton or earplugs?

"A. The noise hurt my eardrums, started hurting my eardrums and working with light metal— so that the ringing noise seemed like it was drawing your whole insides out of your ear. You had to get something to try to muffle the sound." (N.T. 26–28.)

It is true there is no evidence that a physician told him that his loss of hearing was job related. Nevertheless, taking Avery's answers along with the testimony that Sun had requested its employees to wear ear protectors, such as earplugs, the inference is almost unavoidable that he knew for over a year prior to filing his claim that the noise from riveting and chipping hurt his ears and, consequently, impaired his hearing.

II.

Yet, there is a sound basis for sustaining the Deputy Commissioner's decision in favor of Avery. In Aerojet-General Shipyards, Inc. v. O'Keeffe, *supra*, 413 F.2d at p. 796 (footnote 5 omitted), the Court said:

"Even if we were to accept appellant's strained interpretation of the statute, the Commissioner would be entitled to prevail for an additional reason. The Act provides that where the employer receives notice or knowledge of a job-

6. Section 15 of the amendatory Act, P.L. 92–576, 86 Stat. 1262 (1972), substitutes for § 21(b), two new subsections. One, designated as subsection (b), provides for a Benefit Review Board to hear appeals from decisions of the Deputy Commissioners. Subdivision (3) of that subsection states: "The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole."

The other, designated as subdivision (c), allows review of a final order of the Board in an appropriate United States Court of Appeals instead of a Federal District Court. See, 3 U.S.Code Cong. and Admin.News (1972), p. 4718.

connected injury or disease, the statute of limitations shall not begin to run against the employee's claim until an employer's report is filed. The Commissioner found that the Company had notice of Lee's occupational disease. *It is undisputed that the Company failed to file a report with respect to the arthritis and fibrosis.* The Company argues that it filed a report of the ankle injury in 1964 and was not required to file a new report since Lee never returned to work. We find nothing in the statutory language to support this construction, and the Company cites no cases for its proposition. We hold that the plain language of 33 U.S.C. § 930(f) requires an employer with knowledge of an injury to file a report for that injury, whether or not the employee is at the same time disabled from an earlier injury. Therefore, the statute of limitations was tolled, and the employee's claim was timely filed *regardless of when he may have arguably received notice of a work-related disease.*" (Italics supplied.)

The decision of the Deputy Commissioner under his findings of fact states:

"3. That the employee did not give notice of the injury within thirty days, but the employer had knowledge the employee had a hearing loss and that the employment was competent to cause hearing loss and, therefore, was not prejudiced by the lack of timely notice. . ."

■ At the hearing before the Deputy Commissioner, Sun's manager of labor relations, who was in charge of compensation claims filed against Sun, testified that the first time Sun had notice of Avery's alleged hearing loss from working in the shipyard was when Avery filed his compensation claim. By virtue of this testimony, Sun maintains there is no evidence accepted as competent by the Commissioner to support the finding that it was not prejudiced. We disagree. The Commissioner's findings on that score are supported by substantial evidence. Avery testified on cross-examination at the hearing that, in the last three to four years he worked at the shipyard, Sun's safety department had suggested to all its employees in Avery's job category that they wear hearing protectors. At first, Sun supplied earplugs and cotton, and later helmets with built-in earmuffs. He testified that the employees were told that ear protectors would not bring back their hearing but would save what hearing they had left. (N.T. p. 29.)

III.

Alternatively, Sun disagrees with the amount of the award. The Deputy Commissioner found that Avery had sustained a permanent partial loss of hearing in both ears. Regarding the degree of hearing loss and the number of weeks he was entitled to be paid compensation, the Commissioner said:

"8. That the hearing loss of this claimant, measured in accordance with published Guides of the American Medical Association, is 40% binaurally; that under the provisions of Section 8(c)(13) of the Compensation Act this will entitle the claimant to compensation at $70.00 per week for 80 weeks (200 weeks X 40%) from November 6, 1970 to August 12, 1971, a total of $5,600.00 plus interest; that no compensation has been paid."

Section 8(c)(13) of the Act, 33 U.S.C. § 908(c)(13), to which the Commissioner referred in making the above findings, provides:

"(c) Permanent partial disability: In case of disability partial in character but permanent in quality the compensation shall be 66⅔ per centum of the average weekly wages . . . and shall be paid to the employee, as follows:

.    .    .    .    .    .

"(13) Loss of hearing: Compensation for loss of hearing of one ear, fifty-two weeks. Compensation for loss of hearing of both ears, two hundred weeks."

Thus, one of the factors in determining the amount of compensation for loss of hearing is the number of weeks over which compensation is to be paid, the maximum number being either 52 weeks or 200 weeks, depending on whether one or both ears are involved. Sun does not dispute the $70 figure as being 66⅔ per centum of Avery's average weekly wage, nor to the degree of hearing loss of both ears, nor that the maximum number of weeks should be reduced proportionately. It maintains that the amount of the award should not be $5,600 but $2,912, the product of the following numbers:

(1) $70 (66⅔ per centum of Avery's weekly wage);

(2) 52 (maximum number of weeks allowed for complete loss of hearing in one ear);

(3) 40% (degree of permanent loss of hearing); and,

(4) 2 (number of ears involved).

It argues that if a total loss of hearing in one ear is equivalent to a 50% loss of hearing under the Act and the maximum number of weeks of payment for such loss is 52, then it should follow that a lesser number of weeks is required for a partial hearing loss in that ear. We agree that it should be a lesser number of weeks, but not that it should be a percentage of 52 weeks instead of 200. Clearly, if Avery suffered a 40% loss of hearing in only one ear, Sun would be correct in its argument. However, the Act considers complete loss of hearing in both ears as being almost four times (i. e., 200 weeks in contrast to 52) more compensable than for the loss in one ear. It would seem that when a partial loss of hearing takes place in both ears, the number of compensable weeks is to be a proportion of 200 weeks, not 52. If we were to accept Sun's calculations, then 103 weeks is the outer limit for the total number of weekly payments where the hearing loss in both ears is less than complete even though the loss is complete in one ear and almost complete in the other. We do not believe that the Act requires such a result.

Sun's motion for summary judgment will be denied, and the motion of the Deputy Commissioner for summary judgment will be allowed.