In the Matter of the claim for compensation under the DISTRICT OF COLUMBIA WORKMEN'S COMPENSATION ACT.

Charles SWINTON, Appellant,

v.

J. FRANK KELLY, INC. (Employer), et al.

No. 74–1164.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 14, 1975.

Decided Feb. 3, 1976.

Certiorari Denied Oct. 4, 1976.

See 97 S.Ct. 67.

Norman H. Heller, Wheaton, Md., for appellant.

John D. Duncan, III, Washington, D.C., for appellees J. Frank Kelly, Inc. and Hartford Acc. & Indem. Co.

Joshua T. Gillelan, II, Atty., U. S. Dept. of Labor, with whom Earl J. Silbert, U. S. Atty., and George M. Lilly, Atty., U. S. Dept. of Labor, were on the brief, for appellee Garrell.

Before WRIGHT and ROBINSON, Circuit Judges, and OSCAR H. DAVIS,* Judge, United States Court of Claims.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

We are summoned on this appeal to determine whether the denial of an employee's claim for compensation under the Longshoremen's and Harbor Workers' Compensation Act [1] comports with statutory standards. At the administrative level, the employee's effort to obtain a disability award for his ailing back succumbed to a finding that it was not causally related to his prior job-connected accident. An action ensuing in the District Court to set that decision aside foundered on a summary judgment in favor of the employer. Our review of those proceedings leads us to conclude that in neither forum was the Act's presumption of compensability [2] given its just due. Accordingly, we reverse.

I

Appellant Charles Swinton was employed by appellee J. Frank Kelly, Inc.,[3] for eighteen years. On May 12, 1969, while on the job and in the process of positioning a three-hundred pound beam on a truck, he lost his footing, fell off the truck. and was knocked unconscious. On the next day, he went to the office of Dr. Louis E. Lowman, who found abrasions at several bodily points and, importantly, a muscle spasm in the lumbosacral spine. Swinton remained under Dr. Lowman's care until May 26, when the doctor was shot and robbed, and forced to absent himself from practice for several months. When this occurred, Swinton was referred by his employer to the Farragut Clinic, where he was treated until he returned to his job on June 23.

Swinton continued to work until the following February. At that time, complaining of back pain, he returned to Dr. Lowman, who thereupon referred him to an orthopedist, Dr. Julius Neviaser. After an examination, Dr. Neviaser ordered x-rays of the back and prescribed diathermy treatment to be administered by Dr. Lowman. When, after a three-week period, this treatment did not alleviate Swinton's distress, Dr. Neviaser placed him in Prince George's Hospital for another three weeks. There he was kept in traction for about ten days, and on complete bed rest for the remainder of the period.

Swinton's last examination took place in September, 1970, at the office of Dr. Neviaser. Swinton was informed that surgery was necessary, but it was never performed because Swinton could not bear the expense. Thereafter, Swinton continued to complain of back pain and discomfort in his legs. Except for one day during the summer of 1970 when he tried to work but lasted only four hours, he has not engaged in gainful employment since March 6 of that year.

On March 30, 1970, Swinton filed a claim under the Longshoremen's and Harbor Workers' Compensation Act for total disability, attributing his back condition to his

---

* Sitting by designation pursuant to 28 U.S.C. § 293(a) (1970).

1. Act of March 4, 1927, ch. 509, 44 Stat. 1124, as amended, 33 U.S.C. § 901 et seq. (1970), made applicable to the District of Columbia, with exceptions not relevant here, by the Act of May 17, 1928, ch. 612, §§ 1, 2, 45 Stat. 600, as amended, D.C.Code §§ 36–501, 36–502 (1973).

See Cardillo v. Liberty Mut. Ins. Co., 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947).

2. Longshoremen's and Harbor Workers' Compensation Act, § 20, 33 U.S.C. § 920 (1970).

3. The other appellees are the employer's insurance carrier and the Deputy Commissioner whose decision is the subject of review.

fall from the truck.[4] At the hearing, before a Deputy Commissioner, there was no dispute as to the occurrence of the accident or the fact that any injuries associated with it arose out of and in the course of Swinton's employment.[5] Temporary total disability from May 14, 1969, to June 22, 1969, was not contested; compensation therefor had already been paid.[6] The focal issue was the extent of Swinton's injuries; specifically, whether his back problem was causally related to the mishap on the truck.

In his compensation order, the Deputy Commissioner rejected Swinton's claim for further benefits. He found

1. That the claimant did not suffer a back disability as a result of the injury of May 12, 1969.

2. The claimant's need for treatment and care of a back condition which became manifest in February, 1970, was neither causally related to nor the natural and unavoidable consequence of the injury sustained on May 12, 1969.[7]

Swinton then instituted an action in the District Court to set this determination aside. On cross-motions for summary judgment, the court upheld the Deputy Commissioner. Swinton now brings an appeal here.

## II

■ Before considering the merits, we must address a jurisdictional problem, to which none of the parties has adverted.[8] In 1972, while Swinton's action remained pending in the District Court, Congress amended the Longshoremen's and Harbor Workers' Compensation Act.[9] Numerous changes were made, the most significant for our purposes being administrative reforms,[10] particularly the addition of a review stage to the administrative process.[11]

Congress created a three-member Benefits Review Board to resolve appeals from decisions of administrative law judges,[12] to whom the hearing functions previously performed by deputy commissioners were assigned.[13] The Board's decision is reviewable in the court of appeals for the circuit in which the injury occurred.[14] In establishing the new board, Congress evidently believed that two-tiered judicial review was

---

4. Swinton asserts that his total disability began on March 7, 1970, but that, since an operation is necessary and its outcome is not certain, he is unable to determine whether the disability is permanent.

5. As the Deputy Commissioner stated at the outset, "[t]he administrative file indicates that the occurrence of injury on [May 13, 1969] and notice thereof are not in dispute, and that the primary issues to be reserved [sic] include the nature and extent of causally related disability and loss of wages or wage-earning capacity due thereto; also liability for some medical expenses incurred by the claimant." Tr. 4.

6. Swinton had received $400 for temporary disability for 5⅝ weeks from May 14, 1969, to June 22, 1969, at the rate of $70 per week.

7. App. Ex. A at 3.

8. "[A] court may at any time, even on its own accord, raise questions pertaining to its own jurisdiction." In re Adoption of a Minor, 94 U.S.App.D.C. 131, 133–134, 214 F.2d 844, 846–847, 47 A.L.R.2d 813 (1954). See also Louisville & N. R.R. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126, 127–128 (1908); Weedon v. Gaden, 136 U.S.App.D.C. 1, 4 n. 20, 419 F.2d 303, 306 n. 20 (1969); Brooks v. Laws, 92 U.S.App.D.C. 367, 379, 208 F.2d 18, 30 (1953).

9. Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, Pub.L. No. 92–576, 86 Stat. 1251 (1972). Unquestionably, the amendments apply to the District of Columbia. See note 1 supra.

10. The amendments also upgraded benefits, extended coverage to protect additional workers, and provided a specific cause of action for damages against third parties.

11. Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, § 15(b), 33 U.S.C. § 921(b) (Supp.1975).

12. Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, § 15(b), 33 U.S.C. § 921(b) (Supp.1975).

13. Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, § 14, 33 U.S.C. § 919(d) (Supp.1975).

14. Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, § 15(c), 33 U.S.C. § 921(b) (Supp.1975).

no longer necessary,[15] and the provision for initial review in a district court was accordingly removed.[16] Thus the present two-step review process—board and court of appeals—replaces the previous procedure whereby one aggrieved by a deputy commissioner's decision first sought injunctive relief in a district court and, if unsuccessful, by appeal to the appropriate court of appeals.

■ Prior to the 1972 amendment of the Act, Swinton, having lost his disability claim before the Deputy Commissioner, came properly to the District Court. But, as we have stated, while the case remained unresolved in that court, the amendments were passed and became effective. Thus the question we face is whether, despite jurisdiction in the District Court when the action was filed, the subsequent legislation destroyed that jurisdiction, and in turn the power of this court to hear and decide the appeal.[17]

The effect of a statutory amendment on pending litigation is ultimately a matter of congressional intent.[18] In this instance, however, both the legislative language and its history are noncommittal in that regard. We look, then, to judicial precedent and policy for guidance, and thereby are led to conclude that the procedure followed by Swinton was correct, and that our jurisdiction of his appeal remains intact.

■ A judicial preference for prospective as opposed to retrospective legislative endeavor is well entrenched. "Retroactivity," the Supreme Court has declared, "even when permissible, is not favored, except upon the clearest mandate."[19] For "statutes are addressed to the future, not to the past;"[20] those looking back encounter "the principles of our jurisprudence which are repellant to retrospective operation of a law and the repeal by implication of one law by another."[21] Consequently, "statutes are not to be applied retroactively 'unless the words used are so clear, strong and imperative that no other meaning can be annexed to them or unless the intention of the legislature cannot otherwise be satisfied.'"[22]

15. "The change in the judicial review provision is not explained in the legislative history, but one can reasonably assume it reflected a congressional judgment that the added opportunity for administrative review made the district court review unnecessary and potentially exhausting." D. Currie and F. Goodman, *Judicial Review of Federal Administrative Action: Quest for the Optimum Forum*, 75 Colum.L. Rev. 1, 36 (1975).

16. Section 15 of the amending act replaces the old § 921(b) with the new § 921(b) relating to the Benefits Review Board.

17. Undeniably, if the District Court lost jurisdiction, we also are without jurisdiction. *Bruner v. United States*, 343 U.S. 112, 116–117, 72 S.Ct. 581, 584–585, 96 L.Ed. 786, 790–791 (1952); *Smallwood v. Gallardo*, 275 U.S. 56, 62, 48 S.Ct. 23, 24, 72 L.Ed. 152, 156–157 (1927) (in the words of Justice Holmes, "it does not matter that these cases had gone to a higher court. When the root is cut the branches fall."); *Hallowell v. Commons*, 239 U.S. 506, 508, 36 S.Ct. 202, 203, 60 L.Ed. 409, 410 (1916).

18. *Claridge Apartments Co. v. Commissioner*, 323 U.S. 141, 152–165, 65 S.Ct. 172, 179–185, 89 L.Ed. 139, 147–154 (1944); *Smallwood v. Gallardo, supra* note 17, 275 U.S. at 61, 48 S.Ct. at 23, 72 L.Ed. at 156; *United States v. St. Louis, S.F. & T. Ry.*, 270 U.S. 1, 3, 46 S.Ct. 182, 183, 70 L.Ed. 435, 437 (1926); *Hallowell v. Commons, supra* note 17, 239 U.S. at 508, 36 S.Ct. at 203, 60 L.Ed. at 410; *United States Fidelity & Guar. Co. v. United States ex rel. Struthers Wells Co.*, 209 U.S. 306, 314–315, 28 S.Ct. 537, 539–540, 52 L.Ed. 804, 807–808 (1908); *De Rodulfa v. United States*, 149 U.S. App.D.C. 154, 160, 461 F.2d 1240, 1246, 18 A.L.R.Fed. 890, *cert. denied*, 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972); *Sperry Rand Corp. v. FTC*, 110 U.S.App.D.C. 1, 3, 288 F.2d 403, 405 (1961).

19. *Claridge Apartments Co. v. Commissioner, supra* note 18, 323 U.S. at 164, 65 S.Ct. at 185, 89 L.Ed. at 153; *Kalis v. Leahy*, 88 U.S.App. D.C. 166, 167–168, 188 F.2d 633, 634–635, *cert. denied*, 341 U.S. 926, 71 S.Ct. 797, 95 L.Ed. 1358 (1951); *Neild v. District of Columbia*, 71 App.D.C. 306, 314, 110 F.2d 246, 254 (1940).

20. *Winfree v. Northern Pac. Ry.*, 227 U.S. 296, 301, 33 S.Ct. 273, 274, 57 L.Ed. 518, 520 (1913).

21. *Ibanez de Aldecoa y Palet v. Hongkong & Shanghai Banking Corp.*, 246 U.S. 621, 625, 38 S.Ct. 410, 412, 62 L.Ed. 903, 906 (1918).

22. *Boilermakers Int'l v. NLRB*, 114 U.S.App. D.C. 372, 374, 316 F.2d 373, 375 (1963), quoting *United States Fidelity & Guar. Co. v. United*

■ This canon is as apropos to procedural as to substantive statutory amendments.[23] Since Congress evinced no particular intent in enacting the 1972 amendments of the Act, we hold that they leave unaffected the litigation now before us. Indeed, the wisdom of the judicial preference and the conclusion it dictates is apparent in cases such as the present. Swinton had exhausted all administrative remedies available to him at the time he instituted suit in the District Court. To require him now to abandon his three-year quest for judicial relief, and to reenter the administrative process simply because a new administrative review step has been inaugurated, would obviously involve a great waste of time, energy and money. Surely if Congress had thought that such a price was warranted, it expectably would have said so unequivocally. We have no such expression by Congress, and we are satisfied that Swinton need not return to the administrative forum.

■ These considerations lead also to the conviction that the District Court did not lose jurisdiction over challenges to compensation orders brought before it prior to the effective date of the amendments. To conclude otherwise might well leave claimants like Swinton out of time for the new administrative review [24] and, as a result, without any review at all.[25] The fact is that there has always been an opportunity for judicial scrutiny of workmen's compensation decisions,[26] and Congress, in fashioning the 1972 amendments, obviously sought to improve the efficacy of the process. To say that Congress intended to deprive claimants caught in the amending interval of judicial oversight historically afforded all other claimants would border on the ridiculous. We find additional support for our position in the body of other cases adjudicated since the amendments. While none discusses the problem, the treatment uniformly accorded them harmonizes with the result we reach. In all cases where judicial review was sought before the effective date of the amendments, the courts have exercised jurisdiction.[27]

States ex rel. Struthers Wells Co., supra note 18, 209 U.S. at 314, 28 S.Ct. at 539, 52 L.Ed. at 807.

23. *United States v. St. Louis, S.F. & T. Ry.,* supra note 18, 270 U.S. at 3, 46 S.Ct. at 183, 70 L.Ed. at 437; *United States Fidelity & Guar. Co. v. United States ex rel. Struthers Wells Co.,* supra note 18, 209 U.S. at 315–317, 28 S.Ct. at 540, 52 L.Ed. at 807–808; see *Bruner v. United States,* supra note 17, 343 U.S. at 117 n. 9, 72 S.Ct. at 584 n. 9, 96 L.Ed. at 791 n. 9. Of course, where congressional intent is clear, courts will apply the statute retroactively. *Bruner v. United States,* supra note 17; *Smallwood v. Gallardo,* supra note 17; *Hallowell v. Commons,* supra note 17; *Insurance Co. v. Ritchie,* 72 U.S. (5 Wall.) 541, 18 L.Ed. 540 (1867).

24. The Deputy Commissioner's order denying Swinton's claim for disability benefits was issued on June 20, 1972. .

25. Access to the courts of appeals comes only via review of the district court's judgment under the old law or by review of the Benefits Review Board under the new law. The courts of appeals have never had jurisdiction to review directly a deputy commissioner's award.

26. The original legislation provided for judicial review. Longshoremen's and Harbor Workers'

Compensation Act, § 21, as amended, 33 U.S.C. § 921 (1970). That provision remained in substantially the same form until enactment of its counterpart in the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972.

27. *Overseas African · Constr. Corp. v. McMullen,* 500 F.2d 1291 (2d Cir. 1974); *Rockport Yacht & Supply Co. v. Hollis,* 371 F.Supp. 1229 (S.D.Tex.1973); *Leonard v. Walter,* 356 F.Supp. 56 (D.D.C.1973); *Blackwell Constr. Co. v. Garrell,* 352 F.Supp. 192 (D.D.C.1972). See also *Sun Shipbuilding & Dry Dock Co. v. Bowman,* 371 F.Supp. 365 (E.D.Pa.1974), rev'd, 507 F.2d 146 (3d Cir. 1975); *Dillingham Corp. v. Massey,* 505 F.2d 1126 (9th Cir. 1974). While it is always hazardous to speculate why a court did not adhere to an issue, it is hard to believe that all of these courts overlooked the problem.

In *Overseas African Constr. Corp. v. McMullen, supra,* the court was concerned with the retroactive effect of the new provision for attorney's fees. Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, § 13(a)–(c), 33 U.S.C. § 928(a)–(c) (Supp. 1975). In deciding that fees incurred subsequent to the amendments were covered by the new legislation, the court was obviously cognizant of the fact that the claimant had instituted his review proceeding in the district court prior

After careful consideration of the problem, then, we are constrained to maintain the same course here. The constructional canon favoring prospective application of amending legislation, the folly and inequity of returning Swinton to the administrative process, and the absence of any countervailing authority combine to persuade us to hold that the District Court's jurisdiction, and in turn our own, were untouched by the statutory changes.

## III

We turn now to the merits of Swinton's appeal, mindful that judicial review of workmen's compensation proceedings is limited,[28] but also that a compensation order must be set aside if insufficiently supported by substantial evidence.[29] We are advertent, too, to the congressional requirement that "it . . . be presumed, in the absence of substantial evidence to the contrary . . . [t]hat the claim comes within the provisions of" the Act.[30] As we have heretofore characterized this mandate, "the Act . . . presume[s], in the absence of substantial evidence to the contrary, . . . [a] claim comes within [rather than outside its] provisions";[31] put another way, that the employer must rebut "this prima facies" with substantial countervailing evidence.[32]

The insuperable flaw in the case at bar is that it nowhere appears in the administrative record that the Deputy Commissioner accorded this presumption the respect it commands. We are satisfied that if the presumption had been honored, the Deputy Commissioner would have had to find that it was not overcome by substantial evi-

to the amendment's effective date, and that the district court's decision was not issued until a year thereafter. Despite this awareness and the focus on the intervening amendments, the court never mentioned the issue with which we are concerned. The most plausible explanation for this omission is that the court recognized the problem but did not deem it sufficiently substantial to warrant discussion.

In cases in which the Deputy Commissioner's award was issued after the effective date of the amendments, the new review procedure was followed; that is, the claimant went first to the Benefits Review Board and then directly to the court of appeals. *Matthews v. Walter*, 168 U.S.App.D.C. 27, 512 F.2d 941 (1975); *S. H. DuPuy v. Director, Office of Workers' Compensation Programs*, 519 F.2d 536 (7th Cir. 1975). In these cases as well, the propriety of this procedure is not questioned. See also *McCord v. Benefits Review Board*, 168 U.S.App.D.C. 302, 514 F.2d 198 (1975), where a modification request pursuant to 33 U.S.C. § 922 (1970) made after the effective date was transferred to an administrative law judge in accordance with the procedure of the new § 919. These results are not inconsistent with our holding; on the contrary, they are in accord with our logic. Where the claimant can take advantage of the new administrative review methodology without duplicity of effort or delay, it is appropriate that he do so. As remedial legislation, it may be applied immediately, "[a]bsent some contrary indications by the Congress and absent any procedural prejudice to either party." *Denver R. G. W. R.R. v. Brotherhood of Railroad Trainmen*, 387 U.S. 556, 563, 87 S.Ct. 1746, 1750, 18 L.Ed.2d 954, 960 (1967); *Ex parte Collett*, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207, 10 A.L.R.2d 921 (1949); *Pruess v. Udall*, 123 U.S.App.D.C. 301, 359 F.2d 615 (1965).

28. *O'Leary v. Brown-Pacific Maxon, Inc.*, 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483, 487 (1951); *Cardillo v. Liberty Mut. Ins. Co., supra* note 1.

29. *Mitchell v. Woodworth*, 146 U.S.App.D.C. 21, 23, 449 F.2d 1097, 1099 (1971); *Wheatley v. Adler*, 132 U.S.App.D.C. 177, 180, 407 F.2d 307, 310 (en banc 1968); *J. V. Vozzolo, Inc. v. Britton*, 126 U.S.App.D.C. 259, 262, 377 F.2d 144, 147 (1967); *Butler v. District Parking Management Co.*, 124 U.S.App.D.C. 195, 199, 363 F.2d 682, 684 (1966); *Howell v. Einbinder*, 121 U.S.App.D.C. 312, 313–314, 350 F.2d 442, 443–444 (1965); *Robinson v. Bradshaw*, 92 U.S.App.D.C. 216, 220, 206 F.2d 435, 439, cert. denied, 346 U.S. 899, 74 S.Ct. 226, 98 L.Ed. 400 (1953).

30. "In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—(a) That the claim comes within the provisions of this chapter. . . . " Longshoremen's and Harbor Workers' Compensation Act, § 20, 33 U.S.C. § 920 (1970).

31. *Wheatley v. Adler, supra* note 29, 132 U.S.App.D.C. at 182, 407 F.2d at 312, quoting *O'Keefe v. Smith, Hinchman, & Grylls Associates*, 380 U.S. 359, 363, 85 S.Ct. 1012, 1015, 13 L.Ed.2d 895, 898 (1965).

32. *Del Vecchio v. Bowers*, 296 U.S. 280, 286, 56 S.Ct. 190, 193, 80 L.Ed. 229, 232–233 (1935).

dence. Therefore, we cannot permit the compensation order under attack to stand.[33]

■ As noted by the Deputy Commissioner, there is no doubt that Swinton fell from the truck on May 12, 1969, or that any resulting injury arose out of and in the course of his employment. That element of cause and effect was never in issue. The controversy has involved only the second step of causation—whether Swinton's back infirmity and consequent disability, now concededly existent, were byproducts of the fall. The statutory presumption applies as much to the nexus between an employee's malady and his employment activities as it does to any other aspect of a claim.[34] Indulging the presumption its legitimate role, it was the employer's burden to come forward with substantial evidence countering the presumed relationship between Swinton's accident and his disability.

■ That, we find, was not done. There was no evidence directly controvert-

ing the existence of such a relationship. No witness expressed the opinion that the back injury was not precipitated or aggravated by Swinton's tumble from the truck.[35] There was no testimony pointing to another agency; there was no showing of pre-fall or post-fall trauma.[36] In sum, there was nothing whatever to indicate any other cause for Swinton's aching back.

The Deputy Commissioner's decision rested almost entirely on circumstances of a negative character.[37] He found that Swinton "was medically discharged and resumed employment with the employer on June 23, 1969; [and] that during the ensuing 8 months he satisfactorily performed his regular and overtime heavy lifting duties with no known complaints of back pain and no indicated need for treatment of a back condition."[38] He further found that Swinton spent two weeks—June 21 to July 5, 1969—with the District of Columbia National Guard, and that during that period he did

---

**33.** Swinton makes a second argument for reversal, urging that the District Court erred in refusing to consider, as a ground for setting aside the Deputy Commissioner's award, the claim that the back condition was an occupational disease. Finding that Swinton did not raise this claim before the Deputy Commissioner, the District Court refused to consider it. In view of our reversal on the evidence issue, we need not consider this contention.

**34.** This court has frequently drawn upon the presumption to assist a determination as to whether a particular malady was causally connected with job-related activity. See *Mitchell v. Woodworth, supra* note 29, 146 U.S.App. D.C. at 23, 449 F.2d at 1100; *Wheatley v. Adler, supra* note 29, 132 U.S.App.D.C. at 182–184, 407 F.2d at 312–314; *J. V. Vozzolo, Inc. v. Britton, supra* note 29, 126 U.S.App.D.C. at 265, 377 F.2d at 150; *Butler v. District Parking Management Co., supra* note 29, 124 U.S.App. D.C. at 196–197, 363 F.2d at 683–684; *Howell v. Einbinder, supra* note 29, 121 U.S.App.D.C. at 315, 350 F.2d at 445; *Wolff v. Britton,* 117 U.S.App.D.C. 209, 212, 328 F.2d 181, 184 (1964); *Hancock v. Einbinder,* 114 U.S.App. D.C. 67, 71, 310 F.2d 872, 876 (1962); *General Accident Fire & Life Assurance Corp. v. Donovan,* 102 U.S.App.D.C. 204, 206, 251 F.2d 915, 917, *reconsideration denied,* 102 U.S.App.D.C. 207, 251 F.2d 961 (1958); *Travelers Ins. Co. v. Donovan,* 95 U.S.App.D.C. 331, 333–334, 221 F.2d 886, 888–889 (1955); *Vandemia v. Cristaldi,* 95 U.S.App.D.C. 230, 232, 221 F.2d 103, 105 (1955); *Robinson v. Bradshaw, supra* note 29,

92 U.S.App.D.C. at 219–220, 206 F.2d at 438–439; *Travelers Ins. Co. v. Cardillo,* 78 U.S.App. D.C. 255, 257, 140 F.2d 10, 12 (1943); *Hartford Accident & Indem. Co. v. Cardillo,* 72 App.D.C. 52, 54–59, 112 F.2d 11, 13–18, *cert. denied,* 310 U.S. 649, 60 S.Ct. 1100, 84 L.Ed. 1415 (1940); *Maryland Cas. Co. v. Cardillo,* 71 App.D.C. 160, 163, 107 F.2d 959, 962 (1939); *New Amsterdam Cas. Co. v. Hoage,* 61 App.D.C. 306, 307–309, 62 F.2d 468, 469–471 (1932), *cert. denied,* 288 U.S. 608, 53 S.Ct. 400, 77 L.Ed. 982 (1933).

**35.** Appellees point out that neither did Swinton present any expert opinion contending the accident did cause the back condition. It was not, however, the claimant's burden to do that unless and until the employer presented sufficient evidence to rebut the presumed causal connection. While it is true that the presumption is not itself evidence, and once rebutted "falls away," nevertheless it must first be rebutted. *Del Vecchio v. Bowers, supra* note 32, 296 U.S. at 286, 56 S.Ct. at 193, 80 L.Ed. at 232–233; *Hancock v. Einbinder, supra* note 34. See cases cited *supra* note 29.

**36.** Swinton testified that he was involved in no accidents between June, 1969, when he resumed work, and February, 1970, when he returned to Dr. Lowman.

**37.** See, however, text *infra* at notes 49–50.

**38.** App. Ex. A. at 2.

not seek to be excused from rifle range practice, bivouacs, fire fighting drills or simulated combat tests, and did not voice any feeling of discomfort.[39] Likewise, appellees in their brief point only to essentially the same kind of negative evidence. They remind that both the physician and the nurse at Farragut Clinic testified that Swinton, shortly after the accident, never mentioned back pain in his description of symptoms,[40] and that it was not until months later that the clinic became aware of those pains.[41]

■ This court, sitting *en banc* in *Wheatley v. Alder,*[42] recognized that negative evidence, although inadequate in that case, may in some circumstances become informative. As we illustrated, "[i]f a man has no blood in the sputum, no cough, no weakness, no headache, no elevation of temperature or pulse, no stuffiness or pain in the chest—then from all these facts, a doctor can say 'with reasonable medical certainty,' or as a matter of some probability, that this man does not have pneumonia."[43] Stated otherwise, the statutory presumption may be dispelled by circumstantial evidence specific and comprehensive enough to sever the potential connection between a particular injury and a job-related event. It cannot be said, however, that the evidence in this case rose to that level. Here, as in *Wheatley,* no medical expert offered any opinion as to causality; no expert espoused a view that the back ailment was not bred or intensified by his fall. And surely the evidence, such as it was, did not of its own force serve to disestablish the possible affinity of the two.

The caliber of proof, if circumstantial, which the statutory presumption demanded is shaped in part by the fact that here, as in *Wheatley,* the thesis that Swinton's current affliction arose from the accident is "not a mere fancy or wisp of 'might have been.'"[44] Dr. Lowman testified, and his records confirmed, that on Swinton's very first visit—on the day after the fall—there was "some spasm of the muscles in the lumbosacral spine," and further explained that such spasms are "usually due to some type of injury, or traumatic injury."[45] At the time of that first visit, it was his opinion that Swinton had strained the muscles of the lumbosacral spine; nevertheless, he decided not to x-ray the spine immediately, preferring to first rule out the possibility of a ribcage fracture, a procedure which the doctor's forced absence from practice disrupted.[46] Six months later, as Dr. Lowman also testified, enough had emerged to warn that Swinton may have sustained a more severe injury to his back.[47] This body of evidence lends credence to the presumption that Swinton's back problem had its origin in the fall from the truck—that the present

39. *Id.*

40. The nurse who took Swinton's history when he first came to Farragut Clinic on May 28, 1969, testified that neither on that visit nor on his June 20, 1969, visit did he indicate that he had injured his back; he reported injuries to his right knee, right ribs, right elbow, and left hand. The clinic's treatment consisted only of whirlpool therapy for his right knee. Dr. Frederick Hartsock, the clinic physician who treated Swinton also testified that he had no knowledge of a back injury prior to March, 1970, and that the main problem was Swinton's right knee. He noted that Swinton had mentioned his right rib injury and the fact that he was under treatment by Dr. Lowman; Dr. Hartsock, however, "didn't go into the rib problem because it wasn't stressed." Tr. at 140.

41. When Swinton came to the clinic in March, 1970, for his back ailment, Dr. Hartsock "[did] not go into the problem" since he was being treated by both an orthopedic specialist, Dr. Neviaser, and his family doctor, Dr. Lowman. Tr. at 139.

42. *Supra* note 29.

43. 143 U.S.App.D.C. at 183, 407 F.2d at 313, quoting testimony in the case.

44. *Id.*

45. Tr. at 76–77.

46. "No x-rays were made of the lumbosacral region at that time because . . . [I believed] that we [should] rule out the possibility of the ribcage fracture first, and then we'd work on the lumbosacral spine. But we never got to that [because] on the 26th of May I was robbed and shot." Tr. at 78.

47. See text *infra* at notes 49–50.

condition is "but episodic in the sequence of consequences flowing from the [1969 fall]."[48]

The only other evidence from which appellees seek support is Dr. Lowman's first "Attendant Physician's Report," dated September 16, 1969, in which he answered "No" to the question "Will there be permanent defect or facial head disfigurement?"[49] The significance of this response must, however, be assessed in light of his subsequent "Attendant Physician's Report" on March 18, 1970. In the latter, as Dr. Lowman testified at the hearing, he changed his initial opinion on the basis of later orthopedic consultation, and revised his response to the question to advise, with respect to possible permanent injury, that "it's undetermined and it depends on orthopedic follow-up".[50] We perceive no conflict between that position and the statutorily presumed fact that Swinton's back disorder was a consequence of his accident.

■ We cannot accept the presentation made by appellees, and relied on by the Deputy Commissioner, as evidence capable of overtaking the statutory presumption. "Substantial evidence," this court has reiterated, "is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[51] We think the evidence in question cannot survive that test. It is not inconsistent with the proposition that Swinton injured his back when he fell from the truck; it suggests no more than that the full extent of the injury was not immediately medically recognizable. It was not accompanied by other evidence tending to prove that Swinton's back problem is of a type that ordinarily would have become manifest more readily.[52] The evidence is further afflicted by the fact that the "record makes no substantial evidentiary disclosure that would support the proposition that the [back condition] was incited by anything outside the employment."[53] With gaps of this magnitude in the circumstantial evidence relied on to rebut the presumption, we must rectify the denial of Swinton's disability claim.

The Longshoremen's and Harbor Workers' Compensation Act "requires employers to make payments for the relief of employees and their dependents who sustain loss as a result of personal injuries and deaths occurring in the course of their work, whether with or without fault attributable to employers."[54] It "operate[s] to relieve persons suffering such misfortunes of a part of the burden and to distribute it to the industries and mediately to those served by them."[55] Its fundamental purpose considered, the Act "is to be construed liberally for the benefit of employees and their dependents. In their favor doubts, including the factual, are to be resolved."[56]

48. *J. V. Vozzolo, Inc. v. Britton, supra* note 29, 126 U.S.App.D.C. at 264, 377 F.2d at 149. This court is not unfamiliar with medical case histories involving a back injury originally thought to be merely a strain but subsequently discovered to be worse. See *Stancil v. Massey,* 141 U.S.App.D.C. 120, 436 F.2d 274, 14 A.L.R.Fed. 390 (1970).

49. Tr. 97. While apparently neither this report nor the report referred to in note 50 *infra,* was ever introduced into evidence, their existence and content are not contested.

50. Tr. 98, 103–104. See note 49 *supra.*

51. *Avignone Freres, Inc. v. Cardillo,* 73 App. D.C. 149, 150, 117 F.2d 385, 386 (1940), quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–217, 83 L.Ed. 126, 140 (1938).

52. While the Deputy Commissioner made much of the lack of early protestations of back pain by Swinton, App. Ex. A at 2, we have held that mere failure to complain may be "a completely inadequate and insubstantial basis for" concluding that a causal link between accident and injury is nonexistent. *Howell v. Einbinder, supra* note 29, 121 U.S.App.D.C. at 314, 350 F.2d at 444.

53. *J. V. Vozzolo, Inc. v. Britton, supra* note 29, 126 U.S.App.D.C. at 265, 377 F.2d at 150.

54. *Baltimore & Philadelphia Steamboat Co. v. Norton,* 284 U.S. 408, 414, 52 S.Ct. 187, 189, 76 L.Ed. 366, 369–370 (1932).

55. *Id.*

56. *J. V. Vozzolo, Inc. v. Britton, supra* note 29, 126 U.S.App.D.C. at 262, 377 F.2d at 147 (foot-

In like vein, the presumption controlling disposition of this case is "a presumption of compensability grounded in the 'humanitarian nature' of the Act." [57] We recognize that "[r]ebutting evidence may be hard to develop, given the limits of medical ability to reconstruct why 'something unexpectedly goes wrong within the human frame.' " [58] Nonetheless, as we have had occasion to observe, "that is precisely why the presumption was inserted by Congress. It signals and reflects a strong legislative policy favoring awards in arguable cases." [59] In the past, we have frequently drawn upon the presumption to assist a determination as to whether a particular malady was causally connected with employment-related activity.[60] And we have not hesitated to annul orders grounded on evidence too insubstantial to override the presumption.[61]

The evidence in the case before us, at the very least, leaves the issue of causality wide open for serious debate. By the same token, our duty to abide the presumption is clear. "Reliance on mere hypothetical probabilities in rejecting a claim is contrary to the presumption created by the Act. . . . What the Act calls for is facts, not speculation, to overcome the presumption of compensability." [62] And "[w]e have made it clear that we 'will not sustain the administrative findings merely because they are substantiated by some isolated evidence.' " [63] "Our review," we said, "must also take account of the settled rule that the Act is to be construed with a view to its beneficent purposes. Doubts, including factual, are to be resolved in favor of the employee or his dependent family." [64]

On the administrative record, aided by the statutory presumption, the Deputy Commissioner erred in rejecting Swinton's disability claim. The District Court similarly erred in granting summary judgment for appellees. We reverse that judgment and remand the case to the District Court for entry in Swinton's favor of an appropriate summary judgment setting the Deputy Commissioner's compensation order aside.

*Reversed and remanded.*

notes omitted). See also *Wheatley v. Adler, supra* note 29, 132 U.S.App.D.C. at 184, 407 F.2d at 314; *Voris v. Eikel,* 346 U.S. 228, 333, 74 S.Ct. 88, 91–92, 98 L.Ed. 5, 10 (1953); *Baltimore & Philadelphia Steamboat Co. v. Norton, supra* note 54, 284 U.S. at 414, 52 S.Ct. at 189, 76 L.Ed. at 369–370; *Howell v. Einbinder, supra* note 29, 121 U.S.App.D.C. at 314, 350 F.2d at 444; *Hancock v. Einbinder, supra* note 34, 114 U.S.App.D.C. at 70, 310 F.2d at 875; *Phoenix Assurance Co. v. Britton,* 110 U.S.App.D.C. 118, 120, 289 F.2d 784, 786 (1961); *Friend v. Britton,* 95 U.S.App.D.C. 139, 141, 220 F.2d 820, 821, *cert. denied,* 350 U.S. 836, 76 S.Ct. 72, 100 L.Ed. 745 (1955).

57. *Wheatley v. Adler, supra* note 29, 132 U.S. App.D.C. at 182, 407 F.2d at 312, quoting *O'Keeffe v. Smith, Hinchman & Grylls Associates, supra* note 29, 380 U.S. at 363, 85 S.Ct. at 1015, 13 L.Ed.2d at 898.

58. *Wheatley v. Adler, supra* note 29, 132 U.S. App.D.C. at 183, 407 F.2d at 313. The quoted language is from *Commercial Cas. Ins. Co. v. Hoage,* 64 App.D.C. 158, 159, 75 F.2d 677, 678, *cert. denied,* 295 U.S. 733, 55 S.Ct. 645, 79 L.Ed. 1682 (1935).

59. *Wheatley v. Adler, supra* note 29, 132 U.S. App.D.C. at 183, 407 F.2d at 312.

60. See cases cited *supra* note 34.

61. For other cases in this circuit reversing for insufficiency of the evidence to rebut the statutory presumption, see *Mitchell v. Woodworth, supra* note 29, 146 U.S.App.D.C. at 23, 449 F.2d at 1100; *Wheatley v. Adler, supra* note 29, 132 U.S.App.D.C. at 182–194, 407 F.2d at 312–314; *Butler v. District Parking Management Co., supra* note 29, 124 U.S.App.D.C. at 196–197, 363 F.2d at 683–684; *Hancock v. Einbinder, supra* note 34, 114 U.S.App.D.C. at 71, 310 F.2d at 876; *Robinson v. Bradshaw, supra* note 29, 92 U.S.App.D.C. at 219–220, 406 F.2d at 438–439. See also *Howell v. Einbinder, supra* note 29, 121 U.S.App.D.C. at 315, 350 F.2d at 445; *Vendemia v. Cristaldi, supra* note 34, 95 U.S. App.D.C. at 232–234, 221 F.2d at 105–107.

62. *Steele v. Adler,* 269 F.Supp. 376, 379 (D.D.C. 1967). See also *Mitchell v. Woodworth, supra* note 29, 146 U.S.App.D.C. at 23, 449 F.2d at 1100.

63. *Wheatley v. Adler, supra* note 29, 132 U.S. App.D.C. at 184, 407 F.2d at 314, quoting *Friend v. Britton, supra* note 56, 95 U.S.App. D.C. at 141, 220 F.2d at 822.

64. *Wheatley v. Adler, supra* note 29, 132 U.S. App.D.C. at 184, 407 F.2d at 314.