915 F.2d 1557
 Unpublished Disposition
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
John JONES, d/b/a Nicole Enterprises, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 89-1339.
 United States Court of Appeals, First Circuit.
 Sept. 19, 1990.
 
 Petition for Review of a Final Order of the Benefits Review Board, United States Department of Labor.
 Barry K. Mills with whom Hale & Hamlin was on brief, for petitioner.
 
 
 1
 Marianne Demetral Smith with whom Robert P. Davis, Solicitor of Labor, Carol A. De Deo, Associate Solicitor, and J. Michael O'Neill, Counsel for Longshore, were on brief, for respondent Director, Office of Workers' Compensation Programs, United States Department of Labor.
 
 
 2
 Clayton N. Howard and Howard & Bowie Law Offices were on brief, for respondent James D. Williams.
 
 
 3
 Ben. Rev. Bd.
 
 
 4
 PETITION DENIED.
 
 
 5
 Before LEVIN H. CAMPBELL and SELYA, Circuit Judges, and COFFIN, Senior Circuit Judge.
 
 
 6
 COFFIN, Senior Circuit Judge.
 
 
 7
 This case comes before us on a petition for review of a decision of the Benefits Review Board ("BRB" or "Board") awarding compensation under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 903 (the "Act"). The employer contests the award, arguing that written notice was not given or properly excused under the Act and that the Board erred in finding that the employer had failed to present substantial evidence to rebut the presumption that the employee's medical problem was work-related. We find both contentions to be unavailing and therefore deny the petition for review.
 
 
 8
 In April 1978, 20-year-old James Williams slipped from the boom of John Jones' fishing vessel, the Nicole II. He fell about 20 feet to the deck below, landing on his back. He felt a "ringing" sensation throughout his body and had some bleeding from his scrotum, but he refused medical treatment at the time. He went home for a couple of hours, returning to work despite stiffness in his back. Three others were present at the time of the accident: John Jones (the employer), Cary Jones (a relation) and Fred Jones (an unrelated crew member).
 
 
 9
 Williams continued to work for his employer, completing the construction and rigging of the vessel over the next several weeks. He then shipped out as a crew member on the maiden fishing voyage of the Nicole II in early May 1978 and stayed with the crew until July 1978. During this time he worked long hours, lifting substantial weights. After leaving Jones' employment, Williams worked sporadically as a crew member on his father's and brother's fishing boats, doing substantial reaching, but only modest lifting. While Williams experienced continuing stiffness during this period, he suffered no significant pain until early October 1978. He continued to believe that the discomfort would go away over time.
 
 
 10
 In October he began to experience pain in his right leg and back that immobilized him from the waist down, forcing him to see a physician for the first time on October 20, 1978. He followed a course of bed rest, and saw an orthopedist, Dr. Duffey, on December 18, 1978, who diagnosed a possible herniated disc as a result of the April fall. Duffey advised Williams that he should do only sedentary work. After this, Williams was treated by another orthopedic surgeon, Dr. Kimball, who diagnosed sciatic nerve damage as a result of an earlier suspected herniated disc caused by the fall.
 
 
 11
 In late October, after seeing his first doctor about the pain, Williams approached John Jones about the availability of insurance coverage for the injury. Jones was not inclined to talk and Williams gave him no specifics at that time about the injury. Jones told Williams he would check on insurance coverage. When Williams returned a week later, Jones told him there was no coverage and refused to talk with him. Williams contacted an attorney and written notice was served on Jones on January 8, 1979.
 
 
 12
 A formal hearing was held before an administrative law judge (ALJ) on March 7, 1980. The ALJ's decision in favor of Williams was appealed to the BRB, the first of three such appeals. The Board remanded the case twice and finally, in June 1988, the Board issued a decision affirming the ALJ's award of benefits to Williams. After a clerical delay, the decision was appealed to this court.
 
 
 13
 Although several issues have been raised during the course of these lengthy proceedings, only two remain before this court. First, Jones argues that Williams' claim is time-barred because written notice of the injury was not given to Jones within 30 days of Williams' awareness that he had received a disabling injury caused by work. Second, Jones contends that he presented sufficient evidence to rebut the statutory presumption that the injury was causally connected to employment and that, if the evidence is weighed without benefit of the presumption, the injury should be found to be unrelated to employment. We address each issue in turn.[1]
 
 Excuse of Notice
 
 14
 The Board must affirm the factual findings of the ALJ if they are supported by substantial evidence on the record considered as a whole. Bath Iron Works Corp. v. White, 584 F.2d 569, 573 (1st Cir.1978). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Sprague v. Director, Office of Workers' Comp. Programs, 688 F.2d 862, 865 (1st Cir.1982) (quoting Parsons Corp. of California v. Director, Office of Workers' Comp. Programs, 619 F.2d 38, 41 (9th Cir.1980)). "In reviewing for substantial evidence it is immaterial that the facts permit diverse inferences as long as those drawn by the ALJ are supported by evidence." Id. at 866. The Board must affirm if there is substantial evidence to support the ALJ's findings even if it might reach a different conclusion reviewing the record de novo. Id. This court must determine whether the Board adhered to the substantial evidence standard in its review of the ALJ's factual findings. Id.
 
 
 15
 Under the Act, written notice of a work-related injury must be received by the employer within 30 days from the date the employee became aware or should have become aware that he has sustained an injury or illness that is work-related. 33 U.S.C. Sec. 912(a). In this case, the ALJ found that Williams became aware that he had a disabling work-related injury on October 20, 1978, when he was first forced to seek treatment by a physician.[2] Williams did not provide written notice to Jones until January 8, 1979.
 
 
 16
 The statute provides that failure to give notice as required by the statute will not bar a claim where one of several excuses pertain:
 
 
 17
 (1) if the employer ... or the carrier had knowledge of the injury or death, (2) the deputy commissioner determines that the employer or carrier has not been prejudiced by failure to give such notice, or (3) if the deputy commissioner excuses such failure on the ground that ... (ii) for some satisfactory reason such notice could not be given....
 
 
 18
 33 U.S.C. Sec. 912(d).[3] In this case, the ALJ found that notice was excused because the employer received actual notice within the 30-day period when Williams approached him in late October or early November 1978 about possible insurance coverage. The ALJ also found that the employer was not prejudiced by the failure to give written notice. In addition, the ALJ found notice excused under 33 U.S.C. Sec. 912(d)(3)(ii) because the employer had not properly designated an agent as required under the regulations, see 20 C.F.R. Sec. 702.211(b)(4), and because Jones' refusal to discuss the matter with Williams amounted to a refusal to accept information regarding the injury.
 
 
 19
 The employer challenged each of these findings before the Board. The BRB, without reaching the other findings made by the ALJ, affirmed the ALJ's decision on the issue of prejudice. Like the Board, we do not reach the employer's claim of error on these other grounds because we determine that the BRB properly upheld the ALJ's finding of no prejudice.
 
 
 20
 Jones contends that the ALJ's erroneous finding of actual notice prevented the judge from making a proper determination on the issue of prejudice. He argues that the Board held in its 1986 decision that it was error to find notice on the record at that time. Jones therefore claims that if the ALJ improperly concluded that the employer had actual notice on that record, it was impossible for the employer ever to prove prejudice.
 
 
 21
 This argument is unpersuasive. First, the Board did not hold that there was insufficient evidence on the record to support a finding of actual notice. In its 1988 decision, the Board expressly noted that it made no factual findings in the 1986 decision; it merely remanded to the ALJ to make more complete findings. See Appendix at 102. Thus, by the Board's own interpretation of its earlier decision, the ALJ was not foreclosed from again finding actual notice. Second, a fair reading of the ALJ's decision after remand shows independent findings on these two issues. The ALJ's finding of prejudice was not dependent on the finding of actual notice; instead, both findings turned on the ALJ's view of the employer's credibility.
 
 
 22
 A finding of prejudice is warranted where the employer shows that due to the claimant's failure to provide the written notice it has been unable to investigate some aspect of the employee's claim. See Strachan Shipping Co. v. Davis, 571 F.2d 968, 972-973 (5th Cir.1978). Jones essentially argued to the ALJ, the BRB and this court a single conclusory claim of prejudice: that memories had dimmed and the crew had dispersed due to the passage of eight months since the occurrence of the accident. He suggested that, due to these dimmed memories, he had detrimentally relied on the employee's estimate of the date the accident occurred and had been prevented from adequately investigating whether the boat was in navigation at the time of the accident.
 
 
 23
 This allegation of prejudice is insufficient to bar Williams' claim. In the first place, Jones' suggestion that he was prejudiced by the passage of eight months misrepresents the facts here. Williams cannot be charged with any prejudice for "delay" that occurred before he became aware of his disability on October 20. Jones has never challenged the finding that Williams became aware on October 20. Thus, the only claim of prejudice that Jones may legally make is that arising from the seven week delay in filing written notice--between November 19, 1978, 30 days after Williams was aware, and January 8, 1979, the date Williams gave written notice. Jones made no specific allegations of how his ability to investigate any aspect of the incident was prejudiced during this period. He offered to produce no witness whose memory had faded. In fact, according to the uncontroverted testimony of Williams and Fred Jones, the only persons present at the time of the fall were Williams, Fred Jones, Cary Jones and the employer himself, John Jones. Williams and Fred Jones both recalled the incident and that it had occurred before the ship's maiden voyage; their testimony is fully corroborating. Williams' uncontroverted testimony was that Cary Jones also would have supported Williams' description of the event, but that he was out on a fishing trip at the time of the hearing. Cary Jones, a relative of John Jones, presumably would have been called by John Jones if his testimony would have supported a different version or if he was unable to recall the event.
 
 
 24
 Jones has offered nothing that shows either a loss of memory or unavailability of any witness. See ITO Corp. v. Director, Office of Workers' Comp. Programs, 883 F.2d 422, 424 (5th Cir.1989) (conclusory assertion of prejudice caused by lack of "opportunity to investigate claim when it was fresh" was not persuasive). In fact, the only "dimmed" memory involved in this case is that of the employer himself, who claims to have no recollection of the event at all. The ALJ specifically found that Jones was aware of Williams' fall at the time it occurred, see Appendix at 59, and that the employer's present lack of memory was "unbelievable, and self serving," see Appendix at 94.
 
 
 25
 Moreover, despite the fact that Williams consistently maintained that he was not sure of the exact date of the accident, estimating the first week of May, and that as early as his deposition in August 1979, Williams specifically advised Jones to confirm the date based on his own log, Jones raised no question about the alleged date of the incident prior to the March 1980 hearing. In fact, Jones did not investigate until after the original decision by the ALJ in March 1981. The ALJ reasonably inferred that had Jones been informed of the injury seven weeks earlier, he similarly would not have investigated.[4] The ALJ's finding of no prejudice clearly was supported by substantial evidence, and we affirm the Board's decision to this effect.
 
 
 26
 Before leaving the point, however, we address briefly a claim made by the employer at oral argument that we find meritless. Jones contends that the issue of prejudice was never fully argued before the ALJ. Because the initial hearing occurred when both actual notice and lack of prejudice needed to be proved in order to excuse written notice, Jones claims that he focused on the lack of notice and never litigated the issue of prejudice. He says that no new hearing was held on the issue of prejudice after the change in the statute and that he was harmed by the ALJ's findings on a stale record that included no evidence on this issue.
 
 
 27
 We find this argument to be both unpersuasive and improperly preserved. Jones in fact argued prejudice in his initial brief to the ALJ, and the ALJ made findings on the issue in the original decision. See Appendix at 7-8. Moreover, despite the fact that the BRB remanded for additional findings on this point and noted that under the new statute a finding of either notice or prejudice would be sufficient to excuse written notice, see Appendix at 79, Jones never moved for the consideration of additional evidence on the issue of prejudice, as he was entitled to do under the Act. See 33 U.S.C. Sec. 922.[5] Finally, and most importantly, Jones never argued to the Board that the ALJ's findings were flawed because the issue had not been litigated below. We therefore reject the employer's claim of error on this point. See General Dynamics Corp. v. Sacchetti, 681 F.2d 37, 40 (1st Cir.1982) (court may not consider argument not made to the Board).
 
 Causation
 
 28
 Section 20(a) of the Act grants the employee a presumption that his claim comes within the provisions of the Act. See 33 U.S.C. Sec. 920(a); Sprague v. Director, Office of Workers' Comp. Programs, 688 F.2d 862 (1st Cir.1982). In order to rebut the presumption, the burden is on the employer to come forward with substantial evidence that the injury is not causally connected to the employment. Swinton v. J. Frank Kelly, Inc., 554 F.2d 1075, 1081-82 (D.C.Cir.1976). The presumption does not itself constitute affirmative evidence. Once the employer has come forward with substantial evidence, the presumption drops out of the case, and the ALJ weighs the evidence of causation without the benefit of the presumption. Del Vecchio v. Bowers, 296 U.S. 280, 286-87 (1935). In this case, the ALJ found that the employer had not introduced substantial evidence to rebut the presumption of causation, and the BRB affirmed that finding. Our task, therefore, is to determine whether the Board properly observed its obligation to determine whether the ALJ's finding was supported by substantial evidence. See, e.g., Sprague, 688 F.2d at 865.
 
 
 29
 Jones raises two arguments about why the ALJ erred in deciding that the presumption was not rebutted. First, he claims that the ALJ applied the wrong standard. He says that the ALJ required that the employer show some other cause for the claimant's impairment "to a reasonable medical probability". Jones, however, never asserted this claim of error to the Board and we therefore do not consider it. See General Dynamics, 681 F.2d at 40.
 
 
 30
 Jones also claims that substantial evidence was in fact presented and the ALJ should have weighed the evidence without the benefit of the presumption. He contends that the following facts suggest there is no causal connection: Williams returned to work two hours after the fall, experiencing only a ringing sensation and back stiffness; he routinely lifted weights into the hundreds of pounds until July; disabling symptoms did not occur until five months after the fall; one of Williams' physicians could not say to reasonable medical probability that the fall and the injury were causally connected given the time-lag in the onset of disability.
 
 
 31
 Although "negative evidence ... may in some circumstances become informative," Swinton, 554 F.2d at 1083, "the statutory presumption may [only] be dispelled by circumstantial evidence specific and comprehensive enough to sever the potential connection between a particular injury and a job-related event," id. Here, the ALJ reasonably concluded that the negative evidence offered was insufficient to rebut the presumption.
 
 
 32
 The testimony of both of Williams' physicians, Dr. Duffey and Dr. Kimball, was that the most probable cause of Williams' back pain was a traumatic injury. Dr. Duffey diagnosed a likely herniated lumbar disc. Dr. Kimball agreed with Dr. Duffey's diagnosis, and suspected sciatic nerve damage caused by the herniated disc. Both indicated that a fall such as Williams experienced was the kind of trauma that would case such an injury. Both stated that, while not the most likely history to develop, a five-month delay in the onset of disability was consistent with this diagnosis.
 
 
 33
 We note that cases involving back injuries have frequently resulted in lengthy delays between the injury and the onset of disability. See, e.g., J.M. Martinac Shipbuilding v. Director, Office of Workers' Comp. Programs, 900 F.2d 180, 182 (9th Cir.1990) (lapse of three years before onset of disability precluding heavy physical labor); Marathon Oil Co. v. Lunsford, 733 F.2d 1139, 1140 (5th Cir.1984) (disabling nature of injury not appreciated until two years after accident); Swinton, 554 F.2d 1075, 1078 (back injury did not become manifest for nine months following accident); Bath Iron Works Corp. v. Galen, 605 F.2d 583, 584 (1st Cir.1979) (three month delay before back problem became disabling). The employer introduced no evidence that James Williams experienced any back trauma other than the fall in April 1978. In addition, the employer offered no evidence to suggest any non-traumatic cause of the back pain other than some theoretically possible disease origins discussed in medical texts. Dr. Kimball expressly rejected each of the offered theoretical causes as highly unlikely. No expert testified to the contrary. " 'Reliance on mere hypothetical probabilities in rejecting a claim is contrary to the presumption created by the Act.... What the Act calls for is facts, not speculation, to overcome the presumption of compensability.' " Swinton, 554 F.2d at 1085 (quoting Steele v. Adler, 269 F.Supp. 376, 379 (D.D.C.1967)). The employer's textbook "evidence" is therefore inadequate to rebut the presumption.
 
 
 34
 The employer makes much of the fact that the employee's physician could not say to a degree of medical probability that the fall and the back injury were causally related. But the frequent inability of medical experts to state with precision the cause of a disorder " 'is precisely why the presumption was inserted by Congress. It signals and reflects a strong legislative policy favoring awards in arguable cases.' " Swinton, 554 F.2d at 1085 (quoting Wheatley v. Adler, 407 F.2d 307, 312 (D.C.Cir.1968) (en banc)). Williams was under no duty to present expert testimony that the injury was work-related unless and until the employer came forward with substantial evidence to the contrary. Swinton, 554 F.2d at 1082 n. 35. Given this, the failure of Williams' experts to testify to causation to a reasonable degree of medical probability was not substantial negative evidence in rebuttal of the presumption.
 
 
 35
 Admittedly, the employer must make a significant showing in such cases. But this difficulty results from Congress' express intent to presume in favor of the injured employee. We think it clear that the Board followed its statutory obligation to review the findings of the ALJ to see that they were supported by substantial evidence.
 
 
 36
 Petition denied. Costs to respondent.
 
 
 
 [1]
 In its brief, the Director questions whether we have jurisdiction to hear this case because the petition for review named only the Director and not James Williams as party respondent. Because we find the merits of petitioner's claim to be insubstantial, we need not decide the jurisdictional issue. See, e.g., Norton v. Mathews, 427 U.S. 524, 530-32 (1976); Secretary of the Navy v. Avrech, 418 U.S. 676, 677-78 (1974); In re Pioneer Ford Sales, 729 F.2d 27, 31 (1st Cir.1984)
 
 
 [2]
 Although the Director argues to this court that Williams did not become aware of his injury within the meaning of the statute until December 18, 1978, when he was informed that he would be confined to sedentary work, we accept as supported by substantial evidence the ALJ's finding that the date of awareness was October 20
 
 
 [3]
 At the time of the original hearing in this case, the statute excused written notice only upon a finding of both actual notice and no prejudice. The statute was amended in 1984, while this case was on appeal to the BRB. As amended, the statute excuses written notice upon a finding of either alone. The statute as amended applied to all pending cases. See Osmundsen v. Todd Pacific Shipyards, 755 F.2d 730, 731 (9th Cir.1985)
 
 
 [4]
 As the trier of fact, the ALJ is entitled to make reasonable inferences from facts, which must be upheld if supported by substantial evidence. See Cardillo v. Liberty Mutual Ins. Co., 330 U.S. 469, 478 (1947); Bath Iron Works Corp. v. White, 584 F.2d 569, 573 (1st Cir.1978). We disagree with the Board's opinion to the extent that it found the ALJ's inference flawed on this point
 
 
 [5]
 Jones was well aware that the Act provided lenient means for introducing additional evidence. He moved for the admission of additional facts under this provision of the statute, and was granted that admission, for purposes of showing that the date of injury was in error and that Williams was a member of the crew at the time of the accident. See BRB Decision of August 26, 1986, Appendix at 77. In addition, as a practical matter, this new evidence also went to the issue of prejudice. Because this evidence was admitted and considered, Jones cannot accurately claim that the evidence of prejudice on the record dated solely from the 1980 hearing