Bobby BROWN, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,

and

Washington Metropolitan Area Transit Authority, Intervenor.

No. 96–AA–15.

District of Columbia Court of Appeals.

Argued Dec. 10, 1996.
Decided Sept. 25, 1997.

    Keith W. Donahoe, Washington, DC, for petitioner.

Charles F.C. Ruff, Corporation Counsel at the time of briefing, and Charles L. Reischel, Deputy Corporation Counsel filed a statement in lieu of brief, for respondent.

Amy P. Epstein, for intervenor.

Before WAGNER, Chief Judge, and FARRELL, Associate Judge, and PRYOR, Senior Judge.

WAGNER, Chief Judge:

Petitioner, Bobby Brown, seeks review of a decision of the District of Columbia Department of Employment Services (DOES) denying him temporary total disability benefits under the Workers' Compensation Act (D.C.Code § 36–301, *et seq.*) (1981) (Act). He argues that DOES erred in failing to consider employment-related causes for his disability, thereby denying him the benefit of the presumption of compensability. He also contends that the decision is against the weight of the evidence. We conclude that, in denying benefits, DOES did not give adequate consideration to evidence of a work-related injury in 1987 and any recurrence, aggravation or exacerbation of Brown's injury thereafter. The agency also failed to give Brown the benefit of the presumption of compensability under the Act. The determination by the agency that jurisdiction was not in the District was based upon these errors in the proceedings, rendering the jurisdictional determination erroneous. Therefore, we remand the case for further proceedings.

## I.

Brown was employed as a bus operator with the intervenor, Washington Metropolitan Area Transit Authority ("WMATA"), from January 29, 1982 until the time of the hearing in this case. While operating a WMATA bus on December 19, 1983, he suffered cervical and lumbosacral strains when the bus ran into a curb and struck a pole. He sustained an injury to his lower back and was unable to work for four months thereafter. He went to the emergency room at Providence Hospital first, and x-rays of his neck and back were taken which were negative. Brown was treated by a Dr. Hartsock, who referred him to Maxwell Hurston, an orthopaedic surgeon. Dr. Hurston's report of February 29, 1984 states that Brown sustained a lumbar strain which was then symptomatic and that he was still disabled for work. He noted that Brown complained of tenderness on pressure in the lumbar muscles and that some degree of mild spasm was present. Dr. Hurston recommended that

Brown continue therapy three times a week and do prescribed exercises. On March 19, 1984, Dr. Hurston reported that Brown had recovered fully from the 1983 injury and that he had no medical impairment which would justify a ratable disability. Brown then returned to work. Dr. David Johnson, an orthopaedic surgeon, reported on April 5, 1984 that Brown had no complaints and had no permanent impairment from the work-related injury. Dr. Johnson also concluded that Brown had recovered and could return to work.

On or about August 17, 1987, Brown hit a pothole while operating a bus, as a result of which he said that "the seat just dropped and went down on me." Brown said that he reinjured his back at that time and began to experience numbness in his leg. Initially, he went to Dr. Major Gladden, an orthopaedic surgeon, before seeking treatment at Group Health Association, Inc. (GHA). However, Brown continued to work as a bus operator. Subsequently, Brown consulted various physicians periodically at GHA for low back pain.

According to a report from GHA dated May 17, 1991, prepared by a certified nurse practitioner, Susan Marallo, Brown complained of having low back pain for a year and a half which was becoming worse. However, she reported that he told her that he had an old basketball injury about ten years earlier and suffered low back pain off and on since then. Brown denied that he made such statements. Brown saw Dr. John Cohen, a GHA physician on June 21 and August 21, 1991. According to Dr. Cohen's report, Brown complained of chronic low back pain in the right paraspinal area. Dr. Cohen injected Brown with Celestone and Marcaine at the "trigger point area," the area of maximum tenderness. No mention is made of the earlier bus incidents in Dr. Cohen's reports.

In October 1992, Brown injured his back when he misstepped into a hole while disembarking his assigned bus in Virginia. At that time, Brown's bus route was in Virginia, and the employer's job injury report indicated that he was employed with WMATA's Ar-

lington, Virginia office. An MRI (Magnetic Resonance Imaging) examination was taken of Brown's back at GHA which showed that he had a partially degenerated bulging disc. Brown saw Dr. Raphael Lopez at GHA who noted that there may be an impingement on the right S1 nerve root. In interpreting the results of the MRI, Dr. Lopez' impressions were that Brown had (1) a partially degenerated disc at the L5–S1 which protrudes slightly to the right and (2) mild degenerative changes in the L1–2 and L2–3. Dr. Lopez prescribed anti-inflammatory medication and performed three epidural blocks in January 1993. Brown ceased working between December 8, 1992 and March 14, 1993 upon medical advice. It is this period for which Brown seeks temporary total disability benefits in this case.[1]

An independent medical evaluation was performed by Dr. James E. Callan, also an orthopaedic surgeon. He noted that Brown had injuries on December 19, 1983 and August 17, 1987 which had resolved to the satisfaction of the treating physicians; however, he reported that the patient reported continuing intermittent lower back pain after those accidents. In Dr. Callan's opinion, Brown sustained no measurable permanent partial disability which could be directly attributable to the dates of the three reported accidents. Dr. Callan's opinion was that Brown could return to unrestricted duty status, but he suggested that he stand and stretch periodically and maintain a regular exercise program. In deposition testimony, Dr. Callan stated that Brown suffered from "arthritis of the lumbar spine with chronic strain symptoms." Dr. Callan conceded, however, that driving a bus repetitively over city streets has the potential of aggravating Brown's condition and can lead to the type of degenerative process that Brown experienced.

Following an evidentiary hearing, a hearing examiner issued a compensation order on March 9, 1995 in which she found that Brown sustained a new work-related injury in Virgi-

---

1. Brown continued to work as a bus operator and was still working in that capacity on Febru-

ary 14, 1994, when a hearing was held in this case.

nia in October 1992.[2] She determined that his condition following the initial injury in 1983 had resolved after treatment by April 5, 1984 and that Brown "ha[d] not sustained any subsequent exacerbations, aggravations or recurrences of his December 1983 work injury." The examiner found that the record and reports relied upon by Brown were devoid of any opinion that his most recent injury was the result of a recurrence of his 1983 work injury. Therefore, she concluded that jurisdiction was not in the District, since the new injury occurred in Virginia. The Director of DOES affirmed the hearing examiner's order.

## II.

Brown argues that the hearing examiner erred in finding that the 1992 injury in Virginia was a new injury, unrelated to his earlier employment injuries in the District in 1983 and 1987. He contends that the examiner's erroneous finding resulted from the failure to consider all possible employment-related causes for his condition, thereby depriving him of the presumption of compensability available under the Act. *See Ferreira v. District of Columbia Dep't of Employment Servs.*, 531 A.2d 651, 655 (D.C.1987). He contends that he provided sufficient evidence to trigger the statutory presumption of compensability and to shift to WMATA the burden of producing substantial evidence to show that the disability claimed did not arise out of the course of his employment in the District.

■ In the District of Columbia, there is a presumption of compensability under the Act. D.C.Code § 36–321(1); *Ferreira, supra*, 531 A.2d at 655. Its purpose is to advance the humanitarian goal of the statute to provide compensation to employees for work-related disabilities reasonably expeditiously, even in arguable cases. *Id.* at 654–55 (citations omitted). To come within the presumption, a claimant must make an initial showing of some evidence of "a death or disability and a work-related event, activity, or require-ment which has the *potential* of resulting in or contributing to the death or disability." *Id.* (citation omitted). Once that showing has been made, "[t]he presumption then operates to establish a causal connection between the disability and the work-related event, activity, or requirement." *Id.* (footnote and citation omitted). The claimant must provide some evidence that the disability is connected with the employment before the burden of production is shifted to the employer. *Id.* at n. 5. Once shifted, the employer has the burden of producing "substantial evidence" demonstrating that the disability did not arise out of and in the course of employment. *Id.* at 655.

■ In this case, petitioner offered sufficient evidence to make the initial showing. The record shows that Brown suffered three work-related injuries, in 1983, 1987 and 1992. Brown claimed, and there is evidence to support, that the second two injuries, as well as the nature of his work, aggravated the first injury, caused him chronic back pain, and resulted in his progressive degenerative back condition. Brown's testimony concerning the occurrences, as corroborated by the various medical examinations and reports of his condition, show that following the second injury, Brown suffered a chronic back problem. Dr. Lopez wrote in a letter in November 1993 that it was his opinion that Brown's back complaints were work-related and "the natural progression of repeated work-related insults to his back beginning with the injury in 1983 and the aggravation of 1987."

■ Aggravation of a pre-existing condition and repeated trauma which contribute to a disability may constitute a compensable injury under the Act. *Ferreira, supra*, 531 A.2d at 657; *Hensley v. Washington Metro. Area Transit Auth.*, 210 U.S.App. D.C. 151, 155, 655 F.2d 264, 268 (1981) (interpreting similar provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.* (Longshoremen's Act)). DOES has recognized that the Act covers complications flowing from a compensable in-

---

2. The compensation order was issued by Hearings and Appeals Examiner Gail Davis after the examiner who heard the case went on indefinite leave from the staff of DOES. The parties, in response to an order to Show Cause, indicated their consent to the issuance of the order by another hearing examiner.

jury. *In re Vaughn v. Hadley Memorial Hosp.*, H & AS No. 86–204 at p. 7 (July 28, 1986). "The rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury." *Id.*[3]

While the hearing examiner and the Director recognized that Brown's 1992 injury in Virginia would be compensable if it was a recurrence or aggravation of a prior work-related injury in the District, neither considered the effect of Brown's 1987 injury and its sequelae on Brown's 1992 claim. The hearing examiner made no finding as to whether Brown was injured in a work-related accident in 1987 which resulted in an injury to his back or aggravation of a preexisting condition caused by his earlier accidents or the impact of driving a bus over city streets. The hearing examiner addressed specifically only the injury of December 1983, finding that it resolved after conservative treatment by April 5, 1984 and that Brown sustained no subsequent exacerbations of that injury. Similarly, the Director's decision focuses on the insufficiency of the medical evidence to support that the 1992 injury had a relationship to the 1983 injury only.

The agency is required to make basic findings of fact on all material issues. *Dupont Circle Citizens Ass'n v. District of Columbia Zoning Comm'n*, 426 A.2d 327, 334 (D.C.1981). Only then can this court determine upon review whether the agency's findings are supported by substantial evidence and whether those findings lead rationally to its conclusions of law. *Id.; see also Citizens Assn. of Georgetown v. District of Columbia Zoning Comm'n*, 402 A.2d 36, 41–42 (D.C. 1979). Here, Brown's claim was that he had a series of recurrences, including one precipitated by the 1987 accident while on the job, which were impacted by the 1992 accident. These issues are not addressed in the agency's findings; therefore its findings are insufficient to sustain its conclusion that the 1992

injury was a new one, unrelated to these earlier occurrences.

Moreover, it is necessary that the employee show that the injury arose only in part from the employment to be compensable. *See Ferreira, supra,* 531 A.2d at 657; *Hensley, supra,* 210 U.S.App. D.C. at 155, 655 F.2d at 268. In this case, because of the jurisdictional problem, that would mean that Brown would have to show that the injury occurred, in part, during the course of his employment in the District. In determining whether the injury arose in part out of, and in the course of, his employment as a bus driver in the District, the agency was required to apply the presumption of compensability. *Hensley, supra,* 210 U.S.App. D.C. at 156, 655 F.2d at 269. Here, the agency failed to accord Brown the benefit of that presumption. *See* D.C.Code § 36–321(1). Had it done so, it is unlikely that it could have found that the presumption was overcome by substantial evidence as required. *See Ferreira, supra,* 531 A.2d at 655. To meet its burden, the employer must show by substantial evidence that the disability did not arise in the course of the employee's employment. *Id.*

WMATA contends that it offered evidence sufficient to sever any causal connection between the disability and the job-related injury. It points to the absence of medical records of treatment for low back pain between August 1987 and December 1990, the absence from the medical reports of May 17, 1991, June 21, 1991, and August 21, 1991 recordation of references made by Brown to the prior work injuries, and the report of the nurse practitioner of May 17, 1991 in which she stated that Brown reported an old basketball injury. Negative evidence, in some circumstances, may be adequate to inform a factual determination. *See Swinton v. J. Frank Kelly, Inc.,* 180 U.S.App. D.C. 216, 224, 554 F.2d 1075, 1083 (1976). The court in *Swinton* provided the example that " '[i]f a man has no blood in the

---

**3.** *See also Perchelli v. Utah State Indus. Comm'n,* 25 Utah 2d 58, 475 P.2d 835 (1970) (compensation for disc herniation triggered by a sneeze which aggravated a work related injury); *Hayward v. Parsons Hosp.*, 32 A.D.2d 983, 301

N.Y.S.2d 659 (1969)(compensation allowed where claimant's bending while away from the job exacerbated an injury sustained two years earlier).

sputum, no cough, no weakness, no headache, no elevation of temperature or pulse, no stuffiness or pain in the chest—then from all these facts, a doctor can say 'with reasonable medical certainty,' or as a matter of probability that this man does not have pneumonia.'" *Id.* (quoting *Wheatley v. Adler*, 132 U.S.App. D.C. 177, 183, 407 F.2d 307, 313 (1968)). The evidence relied on by WMATA is not of that nature. Evidence that some of the medical reports of 1990 and 1991 do not contain statements attributed to Brown about the nature of his work or the 1983 and 1987 accidents is not the caliber of evidence required to meet the burden of overcoming the presumption of compensability. "The statutory presumption may be dispelled by circumstantial evidence specific and comprehensive enough to sever the potential connection between a particular injury and a job-related event." *Id.* In order for the absence of statements in the reports in this case to have evidentiary significance, we must assume not only that Brown had the level of knowledge sufficient to make the association in 1990 and 1991 between his condition and the earlier injuries and was obliged to report it each time he saw a doctor, but also that any such statements, if made, would have been recorded in the reports. Such a leap would require undue speculation. Therefore, we do not view the absence of the statements attributed to Brown in some of the medical reports to rise to the level required to sever the connection between the 1992 injury and Brown's prior injury and disability.[4]

■ The report of the nurse, disputed by Brown, that Brown associated his condition with an old basketball injury is likewise insufficient to overcome the presumption of compensability in this case. "The fact that other, nonemployment related factors may also have contributed to, or additionally aggravated [the] malady, does not affect [the employee's] right to compensation under the 'aggravation rule.'" *Hensley, supra,* 210 U.S.App. D.C. at 155, 655 F.2d at 268. Therefore, Brown's lay opinion associating the basketball injury with his condition, particularly in light of the medical evidence and his own testimony associating pain and numbness while on the job to his back condition as well, would be insufficient to exclude the work-related insults as a cause for Brown's condition or defeat the presumption of compensability or to show that Brown's disability was not the direct and natural progression of a work-related injury.

WMATA argues that the agency properly accorded little weight to the opinion of Brown's treating physician, Dr. Lopez, that his back complaints were work-related and the "natural progression of repeated work related insults to his back beginning with the injury of 1983 and 1987." The hearing examiner rejected Dr. Lopez' opinion because he had stated in a letter to Brown's attorney that the records at GHA did not reflect a work-related accident on August 17, 1987. Subsequently, Dr. Lopez wrote that based on additional information he received, it was his opinion that Brown's most recent back complaints were the "natural progression" of repeated work-related trauma to his back and the earlier work-related injuries. The hearing examiner viewed the letters as an unexplained inconsistency in the physician's opinion. However, in light of the doctor's explanation that the opinion expressed in the second letter was made based upon additional information, the hearing examiner's rejection of Dr. Lopez' expert opinion on the grounds that it constitutes an inconsistency is inadequately explained, if not clearly erroneous. This perceived inconsistency was not sufficient to defeat Brown's initial showing of compensability or substantial evidence to rebut the presumption of compensability.

WMATA argues that the record reflects that there was only one definite work-related injury prior to October 1992, namely the 1983 occurrence, and that the medical evidence shows that Brown recovered from that injury. These medical reports, however, were made in the context of Brown's ability to

---

4. Dr. Callan notes in his report that Brown related an injury sustained on August 18, 1987 when his bus hit a pothole and that he started going to GHA and saw a general practitioner who injected the lumbar region and followed his progress until August 1991. Brown also testified that he re-injured his back in 1987 when he hit a pothole, as well as about the strain he felt in his back from operating the bus.

work in 1984. Brown does not claim that he had a continuing disability dating back to the 1983 injury. Rather, he claims a series of work-related aggravations of that injury and the injury in 1987 which resulted in progressive degeneration of his lower back and culminated in the disability for the period which is now at issue. The record contains substantial evidence supporting Brown's claim and little evidence to the contrary. While Dr. Callan, a physician engaged by WMATA who saw Brown once, rendered the opinion that Brown "sustained no measurable permanent partial disability that can be directly attributable" to the incidents in 1983, 1987 and 1992, he also conceded that repetitive driving of a bus over city streets, as Mr. Brown did, could aggravate his back condition and lead to the type of degenerative process that he suffered.

Brown's original employment with WMATA was with the Northern garage on 14th Street, within the District's boundaries. While the locus of his employment had shifted to Northern Virginia at the time of the 1992 injury, the events which involved the previous injuries and deterioration of his back were localized within the District.

Since Brown's principal place of employment was in Virginia at the time of the 1992 injury there, and the hearing examiner concluded that the injury was not a recurrence of any work-related injuries in the District, the agency determined that jurisdiction was not in the District. *See Petrilli v. District of Columbia Dep't of Employment Servs.*, 509 A.2d 629, 631 (D.C.1986); D.C.Code § 36–303(a).[5] Thus, the agency's jurisdictional evidence was based upon the flawed premise that the District connection with the injury could not be, or had not been, shown. Accordingly, we must overturn the jurisdictional determination.

For the foregoing reasons, the decision of DOES is reversed, and the case is remanded for further proceedings consistent with this opinion.[6]

*Reversed* and *remanded.*

---

5. D.C.Code § 36–303(a)(1) provides that the Act applies if:
   [T]he injury or death of an employee that occurs in the District of Columbia if the employee performed work for the employer, at the time of the injury or death, while in the District of Columbia[.]

6. Such further proceedings may also cover the issues of legal causation, medical causation, and nature and extent of the disability, which the hearing examiner did not address.