Lucio **MEXICANO, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPART-MENT OF EMPLOYMENT SER-VICES, Respondent,**

**and**

**Pessoa Construction Company, Travelers Insurance Company, Intervenors.**

**No. 01–AA–149.**

District of Columbia Court of Appeals.

Argued June 18, 2002.
Decided Sept. 5, 2002.

---

Manuel R. Geraldo for petitioner.

Robert R. Rigsby, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of a brief, for respondent.

Roger S. Mackey, Fairfax, VA, for intervenors.

Before TERRY, RUIZ and WASHINGTON, Associate Judges.

RUIZ, Associate Judge:

Petitioner Lucio Mexicano seeks review of a hearing examiner's compensation order denying his claim for workers' compensation benefits.[1] He contends that the hearing examiner failed to correctly apply the statutory presumption of compensability by improperly determining that his employer had produced evidence which severed the potential connection between petitioner's neck and shoulder injury incurred while working in May 1997 and his inability to work in construction after September 1998, despite the medically undisputed opinion of petitioner's treating physician that the May 1997 work injury had caused his disability in 1998. Because the hearing examiner made erroneous factual findings and failed to give proper credence to the essentially uncontested opinion of the treating physician—which was supported by independent evidence in the record—we conclude that the employer failed to produce evidence sufficient to overcome the presumption of compensability.

## I.

### A. Factual Background

Petitioner worked for Pessoa Construction Company as a construction laborer. On May 21, 1997, petitioner was in the District of Columbia operating a drill to dig a hole in the ground when the drill bit stuck, and upon his subsequent attempts to remove it, "kicked back" towards him, striking him in the head and shoulder. Thereafter, his head and neck bothered him to the point that he was unable to work for the next two days. Petitioner sought medical treatment on May 23, 1997, at Concentra Medical Center, where he was diagnosed with a concussion to the head, cervical neck strain, and left shoulder strain. He was referred to physical therapy for evaluation and treatment and was authorized to return to work, but was

---

1. Because the Director did not issue a final decision within 45 days of petitioner's appeal, the compensation order became final and appealable. *See* D.C.Code § 32–1522(b)(2) (2001).

instructed not to engage in any lifting of more than fifteen pounds.

Contrary to these instructions, on May 26, 1997, petitioner returned to work at his usual heavy labor duties without restricting himself. He did not miss any further work until March 1998, with the exception of three days on which he returned to Concentra for follow-up consultations, on May 28, June 2, and June 3, 1997. At the time of petitioner's injury, Pessoa had a policy allowing employees who miss work due to a doctor's appointment to receive a full day's pay as long as they reported to work before or after the appointment, and also had a policy allowing medically-restricted employees to perform such light work as they were capable of in Pessoa's main yard at a rate of $8 an hour. Petitioner did not take advantage of either of these policies. Petitioner testified that he was not paid for the days on which he was absent from work, and that although he did not ask for less taxing work, his employer, Julio Pessoa, was aware that he was supposed to be restricted to light duty work. He also testified that he stopped going to Concentra because he could not afford to pay for the taxi fare to the clinic, and that he continued working full-time in his normal work duties despite continuing pain from his injuries in order to "pay rent, the telephone, the bills."

While working at a site in Maryland on February 23, 1998, petitioner slipped and fell from a wall, striking his lower back against the wall and suffering a new injury. He visited Concentra on March 4, 1998, complaining of pain on the left side of his lower back, and was diagnosed with a contusion to the lumbar area of his back.

He was restricted to lifting no more than ten pounds. After follow-up visits on March 6 and 11, 1998, he was diagnosed as suffering from a back contusion and a hairline fracture to a rib.[2] At none of these visits did petitioner mention neck or shoulder pain. It is unclear whether he received any additional treatment, but it appears from the record that these were the only days he did not work before returning to his job full-time—again seemingly without complying with his medical restrictions—until September 1998. Petitioner's employer testified at the administrative hearing that petitioner was offered light duty work in the yard but refused because of the difference in pay between light duty and regular duty work.

On September 25, 1998, petitioner stopped working for Pessoa because of "problems with [his] head" including memory loss and problems with his vision. Two initial medical evaluations were conducted by doctors of Physicians Plus, Inc. On September 28, 1998, Dr. Maruthi Manney recorded that petitioner's chief complaint that day concerned "[b]ack pain and left abdominal wall pain," but noted that "[n]eck pain is constant with activity." The second doctor, Dr. Kumaresan Sankaran, also described petitioner's chief complaint as back pain and lower abdominal wall pain, but did not mention any problems with petitioner's neck, stating only that "[h]ead and neck exam [were] normal." Petitioner returned to Physicians Plus for a medical re-evaluation on October 5, 1998, when Dr. Olakitan Akin observed that petitioner complained of back pain and noted that "[h]e claim[ed] to have had some improvement in pain localized over the neck and mid-back." On

---

2. A workers' compensation claim was filed in Maryland by petitioner regarding to this injury, and therefore it is not at issue in this case. Petitioner was referred to Dr. Kevin Hanley for an examination of his lower back. Dr.

Hanley concluded that his back injury had resolved, that nothing in the examination suggested he required any sort of treatment, and that he was fit for duty.

October 14, 1998, petitioner was examined again by Dr. Akin, who wrote that petitioner "was seen today complaining of neck pain and back pain."

On October 20, 1998, petitioner visited Dr. Rosita H. Dee for an initial consultation.[3] In reviewing his medical history, Dr. Dee indicated that "although [petitioner] had slight relief [at the time he was being treated for his back injury in March 1998] the symptoms from the first accident were never resolved." Her diagnosis was that petitioner had a severe cervical and shoulder strain as well as a cerebral concussion, all due to the May 21, 1997 injury, and she observed that petitioner was suffering from severe neck and shoulder pain. Dr. Dee conducted several follow-up examinations and referred petitioner for MRIs of his cervical and thoracic spine. One of the MRIs detected a "central protrusion of disc material at the C3/4 level associated with posterior osteoarthritic spurring" and "mild bilateral outlet stenosis," in addition to a "central protrusion of disc material at the C4/5 level." Dr. Dee continued treating petitioner through February 11, 1999. She later sent two letters to petitioner's attorney, stating her opinion that the neck injury sustained in May of 1997 prevented him from returning to his construction duties.[4]

### B. The Compensation Order

Petitioner filed a claim pursuant to the Workers' Compensation Act, D.C.Code § 36–301, *et seq.* (1997), recodified as D.C.Code § 32–1501, *et seq.* (2001), seeking temporary total disability benefits for "intermittent" days of work which he missed due to his clinic visits from May 22, 1997 through June 3, 1997, and from October 20, 1998 to the present, including related medical expenses. In a compensa-

---

3. It is unclear how petitioner decided to consult with Dr. Dee. A letter to petitioner's attorney dated November 9, 1998, indicates that petitioner failed to return to Physicians Plus for re-evaluation or therapy after experiencing normal progress, and that he was therefore discharged from their care in "an unknown state of health."

4. A June 2, 1999 letter from Dr. Dee stated:

In my opinion, this patient's medical condition namely; diffuse spondylosis of spine and herniated disc at critical area C3–4 of the cervical spine, limit his ability to return to his current occupation i.e. construction.

His soft tissue injuries will be recurrent process.

I advice [sic] him to go more sedentary or lighter type of occupation.

In a fax dated August 30, 1999 to petitioner's attorney, Dr. Dee wrote in relevant part:

The patient's current diagnosis is acute cervical, shoulder and thoracic strain with cerebral concussion and cervical radiculopathy secondary to the work accident of May 21, 1997. The condition at this point is intermittent with relapses and ongoing disability. My prognosis is that the pa-

tient's soft tissue injury involving not only the neck muscle but also ligaments in the neck, back is healing slower than the usual but at this point may never heal.

I ordered an MRI of the patient's neck because of the persistent pain and radicular symptoms. The MRI revealed herniated disc at C3–4 and C4–5 levels. It is my opinion within a reasonable degree of medical certainty that the "herniated disc at critical area of C3–4 and C4–5 of cervical spine" was caused by the accident of May 21, 1997 or was an asymptomatic condition that became symptomatic after May 21, 1997 accident that has caused the patient's current level of disability. It is my opinion within a reasonable degree of medical certainty that "diffuse spondylosis of spine" is a preexisting condition that was aggravated by the work accident of May 21, 1997 and is now chronic.

It is my opinion within a reasonable degree of medical certainty that Mr. Mexicano is permanently disabled from returning to his job as a construction worker. Physically he simply does not have the strength and any repeat injury unfavorable to C3–4 may transect his spinal cord leading to respiratory arrest and quadriplegia.

tion order dated October 30, 2000, the hearing examiner found that petitioner's testimony that he had continuous neck, head, and shoulder pain which prevented him from working sufficed to invoke the presumption of compensability provided for by D.C.Code § 36–321(1) (1997), recodified at D.C.Code § 32–1521(1) (2001). Despite this initial showing, the hearing examiner concluded that the employer had presented evidence sufficient to overcome the presumption of a causal relationship between the injury and the disability, relying on the absence of any mention of petitioner's neck pain in five medical examinations preceding the October 14, 1998, examination, and petitioner's testimony that he returned to full duty as a laborer for the period between the May 1997 injury and the February 1998 back injury without seeking medical treatment. The hearing examiner dismissed Dr. Dee's medical opinion, reasoning that the

> long period between the work injury and Dr. Dee's first examination, and its reliance on the claimant's report of only slight relief from symptoms following the injury, cause me to reject the causal relationship opinion expressed therein. The claimant's acknowledgment that he returned to work not only between May 1997 and February 1998, but then again from February 1998 until September 199[8], to the heavy, laborious activities that he described, without missing any time from work and without seeking any medical treatment for his head or neck, suggests that the history given to the doctor is faulty and inaccurate, and the opinion is not based upon valid assumptions.

The hearing examiner thus limited the period in which disability would be presumed to the period prior to March 4, 1998, as the medical records on that date failed to make reference to any neck or shoulder complaints. Given that petitioner

had established only two days on which he was disabled—May 22 and May 23, 1997—the hearing examiner determined that petitioner was not entitled to any compensation under the Act. *See* D.C.Code § 36–305(a), recodified at D.C.Code § 32–1505(a) (2001).

## II.

### A. Standard of Review

▮▮▮▮ We affirm an agency decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *See Upchurch v. District of Columbia Dep't of Employment Servs.*, 783 A.2d 623, 626 (D.C.2001) (citing *Charles P. Young Co. v. District of Columbia Dep't of Employment Servs.*, 681 A.2d 451, 456–57 (D.C.1996)). Thus, an agency decision will be sustained unless it is unsupported by substantial evidence in the record as a whole. *See Waugh v. District of Columbia Dep't of Employment Servs.*, 786 A.2d 595, 598 (D.C.2001). Substantial evidence is more than a mere scintilla, and constitutes such relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *See Clark v. District of Columbia Dep't of Employment Servs.*, 772 A.2d 198, 201 (D.C.2001) (citations and quotations omitted). If substantial evidence exists, this court may not substitute its judgment for that of the agency. *See id.*

### B. Presumption of Compensability

▮▮▮▮ Once an employee offers evidence demonstrating that an injury was potentially caused or aggravated by a work-related activity, a presumption arises that the injury is work-related and therefore compensable under the Workers' Compensation Act. *See* D.C.Code § 32–1521(1); *Waugh*, 786 A.2d at 599 (quoting *Washington Hosp. Ctr. v. District of Co-*

*lumbia Dep't of Employment Servs.*, 744 A.2d 992, 996–97 (D.C.2000)). The purpose of this presumption is to "advance the humanitarian goal of the statute and to provide compensation to employees for work-related disabilities reasonably expeditiously, even in arguable cases." *Brown v. District of Columbia Dep't of Employment Servs.*, 700 A.2d 787, 791 (D.C.1997).

 To benefit from the statutory presumption, the employee need only show "some evidence" of a disability and a work-related event or activity which has the *potential* of resulting in or contributing to the disability. *Washington Hosp. Ctr.*, 744 A.2d at 996–97 (quoting *Ferreira v. District of Columbia Dep't of Employment Servs.*, 531 A.2d 651, 655 (D.C.1987)). Such a showing effectuates the presumption, which "operates to establish a causal connection between the disability and the work-related event, activity, or requirement," and shifts the burden of production to the employer to produce substantial evidence "demonstrating that the disability did not arise out of and in the course of employment." *Brown*, 700 A.2d at 791. "The statutory presumption may be dispelled by circumstantial evidence specific and comprehensive enough to sever the potential connection between a particular injury and a job-related event." *Waugh*, 786 A.2d at 600 (citation omitted).

Although intervenors do not dispute that the presumption was properly raised in this case, they contend that they presented substantial evidence to meet their burden of dispelling the presumption of compensability. Specifically, they point to petitioner's failure to refer to his neck injury in five medical consultations prior to October 14, 1998, and petitioner's testimony that he worked as a heavy duty laborer full-time despite his alleged injuries and even though light duty work was available. Further, they claim that the examiner adequately set forth reasons for discrediting Dr. Dee's opinion, and that the examiner's credibility determination on this issue should control.

We find two flaws with the hearing examiner's reasoning that lead us to conclude that his decision is not supported by substantial evidence. First, the examiner erroneously stated that petitioner made no mention of his neck injury after the June 3, 1997, examination until October 14, 1998, despite three consultations with physicians in March of 1998 for his second injury (to the lower back) and two additional examinations on September 28 and October 5, 1998. The administrative record reflects, however, that petitioner gave at least some indication that he was experiencing neck pain on two of the medical visits preceding the October 14 appointment. On September 28, Dr. Manney noted petitioner's complaint that "neck pain was constant with activity," and on October 5, Dr. Akin observed that petitioner had experienced some improvement in pain in his neck and mid-back. It is only in the medical visits to Concentra in March 1998 following the injury to his lower back that the medical reports contain no mention of petitioner's neck pain.

Second, the hearing examiner's rejection of Dr. Dee's medical opinion was not supported by the requisite "specific and comprehensive" evidence necessary to sever any causal connection between petitioner's disability and his May 1997 injury. Intervenors emphasize evidence which they allege supports the hearing examiner's decision: (1) the eighteen month period that elapsed between the May 1997 injury and Dr. Dee's initial examination; (2) that Dr. Dee made only one "undated report" concerning causation and earlier had noted that petitioner's main difficulties resulted from muscle spasms and poor conditioning of his muscles; and (3) that Dr. Dee's

opinion was based on the erroneous assumption that petitioner's head, neck, and shoulder problems had never ceased after the first accident, whereas petitioner had been released to work two days after his May 1997 injury, worked full-time as a laborer without restriction, never told anyone else that he had obtained only slight relief from his injuries, the treatment records of the first injury universally refer to it as merely a sprain, and petitioner did not seek treatment until October 1998.

■■■ Where conflicting medical testimony exists, an agency must take into account the testimony of a treating physician, but "the hearing examiner, as judge of the credibility of witnesses, may reject the testimony of a treating physician and decide to credit the testimony of another physician when there is conflicting evidence." *Clark*, 772 A.2d at 202 (citing *Canlas v. District of Columbia Dep't of Employment Servs.*, 723 A.2d 1210, 1211–12 (D.C.1999)). Thus, although the opinion of a treating physician is ordinarily entitled to significant weight, "a hearing examiner may discount a treating physician's opinion if the examiner sets forth specific and legitimate reasons for doing so." *Olson v. District of Columbia Dep't of Employment Servs.*, 736 A.2d 1032, 1041 (D.C. 1999).

We need not decide whether the hearing examiner must accept the treating physician's opinion where, as in this case, there is no contrary medical opinion, if the examiner discredits the treating physician's opinion because it is based on an incomplete medical history or is otherwise contrary to other non-medical evidence. The examiner rejected the treating physician's opinion in this case based on the lapse of eighteen months between claimant's initial injury and Dr. Dee's October 1998 consultation, and the doctor's reliance on petitioner's report that he had

only slight relief from his symptoms following this injury. The examiner interpreted petitioner's return to his full work duties without seeking medical treatment as "suggest[ing] that the history given to the doctor [was] faulty and inaccurate," and thus concluded that the doctor's opinion was not based on valid assumptions. The hearing examiner's reasons for rejecting Dr. Dee's opinion, however, are not supported by the record and fail to address the basis for Dr. Dee's medical opinion. The record reflects that Dr. Dee was aware that petitioner had returned to work after the May 1997 injury, specifically noting in her initial consultation that "he continued working to earn his daily wages." Moreover, the hearing examiner's order failed to address an MRI conducted on December 11, 1998, indicating "central protrusion[s] of disc material" at the C3/4 and C4/5 level of petitioner's cervical spine, which supported Dr. Dee's diagnosis of petitioner's neck injury and petitioner's report to the doctor that he continued to have neck pain from his 1997 injury. Dr. Dee explicitly relied on this MRI in opining that either the May 1997 injury had directly herniated a disc in petitioner's neck, or the herniated disc was an asymptomatic preexisting condition that became symptomatic after the May 1997 accident, causing petitioner's current level of disability. She also stated her medical opinion, based on the MRI, that petitioner had a preexisting condition of "diffuse spondylosis of spine" that was aggravated by the neck injury and "is now chronic." On the basis of this diagnosis, Dr. Dee concluded that petitioner was "permanently disabled [ ] from returning to his job as a construction worker."

■■■ In light of the opinion of the treating physician, which merits special consideration, the evidence presented by

the employer that petitioner returned to work full-time and failed to mention the May 1997 injury to his neck when he saw the doctor immediately following the injury to his lower back in 1998, is not "specific and comprehensive enough" to overcome the statutory presumption of compensability, particularly where petitioner explained that financial pressures drove him to keep working in heavy construction contrary to medical advice and in spite of continuing pain. *Compare Brown,* 700 A.2d at 792–93 (evidence that medical reports did not contain statements by claimant concerning low back pain or references to prior accidents did not rise to the level required to sever connection between injury and disability), *with Olson,* 736 A.2d at 1038 n. 21 (failure to inform doctor of past history in addition to conflicting medical evaluations sufficient to rebut presumption of compensability). Where the presumption of compensability is not rebutted, "the compensation claim will be deemed to fall within the purview of the statute," and the claimant is entitled to compensation. *Parodi v. District of Columbia Dep't of Employment Servs.,* 560 A.2d 524, 526 (D.C. 1989).

*Reversed.*