Anthony SMITH, Petitioner,

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,**

**Federal Data Corporation and AIG Claim Services, Intervenors.**

No. 05–AA–927.

District of Columbia Court of Appeals.

Argued Sept. 21, 2006.
Decided Oct. 25, 2007.

Kirk D. Williams, for petitioner.

Edward E. Schwab, Deputy Solicitor General for the District of Columbia, Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the statement was filed, and Todd S. Kim, Solicitor General for the District of Columbia, filed a statement in lieu of brief for respondent.

Joel E. Ogden, Baltimore, MD, with whom Lisa A. Zelenak was on the brief, for intervenors.

Before KRAMER and FISHER, Associate Judges, and NEWMAN, Senior Judge.

KRAMER, Associate Judge:

Petitioner is appealing from a decision and order of the Compensation Review Board (the Board) affirming a compensation order by an Administrative Law Judge denying petitioner's claim for workers' compensation benefits under the District of Columbia's Workers' Compensation Act, D.C.Code §§ 32–1501–1545 (2001) (the WCA). Petitioner contends that the Board's chosen "manifestation rule" for determining when cumulative traumatic injuries are compensable under the WCA conflicts with the Act's presumption of compensability and that the Board's decision should therefore be reversed and his claim granted. We affirm.

## I

The relevant facts of this case are essentially undisputed. Petitioner, a Maryland resident throughout the time period pertinent to this case, began working as a computer help-desk representative for various companies in the late 1980s. This work involved taking telephone calls from those experiencing problems with computer hardware or software, and for each call, recording its nature, using on-and off-line resources and manuals to troubleshoot problems, guiding the caller through a solution, and typing in a summary of the call upon completion. These duties required considerable, although not continuous, typing.

From January 2000 to November 2001, petitioner worked as a help desk assistant for Federal Data Corporation (FDC), a Maryland Corporation headquartered in Maryland. FDC had no office in the District of Columbia. Its help desk employees, however, often worked off-site at the offices of the company's clients. Thus, during the approximately twenty-two months petitioner was employed by FDC, he worked approximately three and one-half months in the District, three to four weeks in Pennsylvania, and the remainder of his tenure in Maryland. His first assignment in the District was at the Internal Revenue Service (IRS) building, where he worked from January to April of 2000; this comprised the entirety of his work in the District on behalf of FDC.

Petitioner testified that during his assignment at the IRS building, he first began to experience numbness and tingling in his hands, symptoms he initially attributed to poor circulation. He did not report these symptoms to anyone at FDC or seek any accommodation while he was in the company's employ, however, because he did not consider the symptoms serious at the time.

Petitioner first consulted a doctor about the symptoms in his hands and wrists on January 9, 2001, approximately eight months after he last worked for FDC in the District, when he mentioned them to a primary care physician during a visit prompted by sinus problems. According to the examining physician's notes, the doctor attributed the pain to "possibl[e] carpal tunnel," prescribed Vioxx, and advised the petitioner on the use of a wrist brace.

On November 9, 2001, petitioner's employment with FDC ended when he was laid off at the conclusion of the contract on which he was working. Petitioner was not employed again until approximately June 2002, when he started a janitorial business. The work required, according to a subsequent medical report, "strenuous use of the hands, to include the use of mops, brooms, pressure washers and buffers." In the meantime, the symptoms in petitioner's hands and wrists had intensified.

Thus, on August 14, 2002, petitioner consulted an orthopedic surgeon and was diagnosed with bilateral carpal tunnel syndrome. Subsequent nerve conduction studies and electromyography confirmed that petitioner's carpal tunnel syndrome was "severe" in his right hand and "moderate" in his left.

On October 28, 2002, petitioner filed a claim seeking past and prospective medical expenses with the District of Columbia Department of Employment Services (DOES), claiming injury from repetitive data entry and citing the date of injury as January 9, 2001. He then amended this filing on December 18, 2002, changing the date of injury to December 8, 1999. A formal hearing was held before Administrative Law Judge Anand K. Verma, who denied petitioner's claim on the basis that the District of Columbia lacked jurisdiction over the matter. Petitioner appealed this decision to the Board, which, in its decision and order, essentially adopted the factual and legal findings of Judge Verma in their entirety. This appealed followed.

## II

■ Although several issues were raised in petitioner's appeal to the Board, the agency treated the jurisdictional question as dispositive, and that holding is the basis of petitioner's appeal. The essence of petitioner's argument is that the WCA contains a statutory presumption of compensability and that this presumption should underlie determinations of jurisdiction, as well as causation. While petitioner concedes that some version of the manifestation rule should govern the determination of when, and therefore where, a cumulative traumatic injury such as carpal tunnel syndrome "occurs" for statutory purposes, see D.C.Code § 32–1503 (2001), he argues that the statutory presumption of compensability requires

DOES to apply whatever version of the rule "encourages coverage for injured workers." As in matters of causation, "[t]he burden then shifts to the employer to rebut the presumption."

The resolution of petitioner's claim requires an explication of this court's limited oversight of the administrative process, analysis of the relevant portions of the WCA, and an understanding of the difficulties cumulative traumatic injury presents in the administration of the District's workers' compensation laws.

### A. Judicial Review of Agency Decisions

■ We begin by examining this court's standard of review of agency decisions such as this. The process of review of an agency decision by this court was succinctly set out in *Zhang v. District of Columbia Dep't of Consumer & Regulatory Affairs:*

> Our review of administrative orders is two-fold. First, we review the factual findings of the agency to determine if there is substantial evidence to support them. If, after examining the record as a whole, we conclude that the agency's findings are supported by substantial evidence, we must accept those findings, even if the record could support a contrary finding.
>
> Next, we conduct a *de novo* review of the agency's legal conclusions. We generally accord great deference to the agency's interpretations of its own regulations, so long as that interpretation is reasonable and consistent with the statutory language, and we leave an agency's decision undisturbed *if it flows rationally from findings of fact that are supported by substantial evidence in the record.*

834 A.2d 97, 101 (D.C.2003) (internal quotation marks and citations omitted). Substantial evidence, in this context, is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gross v. District of Columbia Dep't of Employment Servs.*, 826 A.2d 393, 395 (D.C.2003) (internal quotation marks and citations omitted). Thus, while this court retains an important role in ensuring the ultimate legal integrity of DOES decisions, it is not within our purview to micromanage the myriad policy, operational, and fact-finding functions undertaken by this body. *See Orius Telecomm., Inc. v. District of Columbia Dep't of Employment Servs.*, 857 A.2d 1061, 1065 (D.C.2004) ("Our review of the director's decision in workers' compensation cases is generally restrained.").

## B. The WCA's Two–Tiered Jurisdictional Scheme

The Board's jurisdictional decision that led to the denial of benefits for petitioner in this case rested on its finding that petitioner's injury occurred outside of the District of Columbia because on the date the injury manifested itself, his employment was not in the District. This finding rests on the WCA's current two-tiered jurisdictional, or "coverage," scheme. Formerly, employment-related injuries were compensable under the WCA only if the claimant's employment was " 'principally localized in the District.' " *King v. District of Columbia Dep't of Employment Servs.*, 742 A.2d 460, 466 (D.C.1999) (quoting D.C.Code § 36–303). This meant that in some cases, a worker injured on the job in the District would not be covered by the District's workers' compensation laws. *Id.*

In 1991, the Council amended the WCA to expand coverage for injuries occurring within the District's borders. *Id.* These amendments established the two-tiered jurisdictional scheme that endures to the present day. *See* D.C.Code § 32–1503(a) (2001). Under the amended Act, the threshold jurisdictional question focuses on the location where the injury occurred, rather than on the location of the employer's principal place of business. *King, supra*, 742 A.2d at 466 (citing COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT ON THE DISTRICT OF COLUMBIA WORKERS' COMPENSATION EQUITY AMENDMENT ACT OF 1990, at 14–15 (1990)). If the employee was working in the District "at the time of the injury," the Act applies. *See* § 32–1503(a)(1); *see also King, supra*, 742 A.2d at 466. For employment-related injuries occurring outside the District, however, § 32–1503(a)(2) retains the rule that such injuries are compensable under the District's law only "if, at the time of the injury . . . the employment is localized principally in the District of Columbia." *See King, supra*, 742 A.2d at 467. Thus, fixing the time (and therefore the place) of injury is a "necessary" step in determining whether the WCA grants jurisdiction over the matter. *Id.* at 467.

## C. Applying the WCA's Jurisdictional Provisions to Cumulative Traumatic Injuries

In *King*, this court considered at length the question of applying the WCA's jurisdictional provisions to cumulative traumatic injuries (which include carpal tunnel syndrome).[1] These injuries present a special challenge in the workers' compensation area, since "it is not possible to identify a discrete event occurring at a particular date and time that causes (or aggravates) the injury. Instead, the cumulative traumatic injury becomes manifest only after the body's re-

---

1. At the time *King* was decided, the "coverage" provisions of the WCA were codified under D.C.Code § 36–303 (1981). The relevant provisions have since been re-codified, without modification, under D.C.Code § 32–1503(a) (2001).

peated exposure to individually minor traumas, insults, or harmful employment-related conditions...." *Id.* at 469. Thus, a jurisdictional standard defined with insufficient clarity could lead to forum shopping by a claimant, subjecting employers and their insurance carriers to unknown risks and undermining the goals of predictability and limited liability that workers' compensation laws are designed to promote. On the other hand, too rigid a standard could lead to incongruous results, such as the denial of benefits to one who suffers a *bona fide* injury after working for a substantial amount of time within the jurisdiction. Because of the "many considerations bearing on the implementation of the WCA," *id.* at 473–74, *King* recognized that the choice of adopting specific guidelines and rules involved policy considerations that are best left, in the first instance, to DOES.

Nonetheless, *King* proposed the following analytical framework as a general guideline: First, the agency should decide whether the case involved the aggravation of a preexisting condition through a discrete injury or an injury that resulted from a gradual accumulation of work-related trauma. *Id.* at 467. It concluded that in the case of cumulative trauma, the agency would need to adopt a rule for determining the time of injury. Contrary to the ad hoc regime advocated by petitioner-which would require DOES to adopt different rules in different cases-the *King* court specifically stated that a "consistent approach" was "necessary." *Id.* at 470. Once the time of injury was determined, the agency could then determine the place

of injury and apply the appropriate subsection from the coverage provisions of the WCA. For those work-related injuries occurring outside of the District, the factors approved in *Hughes v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 567 (D.C.1985),[2] would then guide the determination of whether the employment, at the time of the injury, was "localized principally" in the District and thus subject to District law. *King, supra,* 742 A.2d at 474.

The heart of the *King* approach thus involves determining the time of a cumulative injury. *King* surveyed several approaches to this issue and strongly suggested, although it did not mandate, that DOES adopt a rule that fixes the time of a cumulative injury on "the date on which disability manifests itself." *Id.* at 470, 473–74. As to which specific formulation of the "manifestation rule" to apply, the court expressed no opinion, preferring to leave that determination to DOES. *Id.* at 473. It noted, however, that several versions exist, including: (1) the date when the employee's pain or symptoms made continued work impossible; (2) the date of the onset of pain occasioning medical attention, even where such pain does not render the employee unable to work; (3) the date the employee becomes aware of, or through due diligence should have been aware of, a connection between the symptoms and employment; and (4) the date the employee first seeks medical attention for the symptoms (whether or not the employee ceases work), or the date of disability, whichever comes first. *Id.* at 470–72.

---

**2.** These factors are as follows:
1) The place(s) of the employer's business office(s) or facility(ies) at which or from which the employee performs the principal service(s) for which he was hired; or
2) If there is no such office or facility at which the employee works, the employee's

residence, the place where the contract is made and the place of performance; or
3) If neither (1) nor (2) is applicable, the employee's base of operations.
*Hughes, supra,* 498 A.2d at 569.

*King* reviewed pertinent precedents within the District of Columbia and noted that DOES previously had used the date the employee first seeks medical attention for the symptoms, or the date of disability, whichever comes first, to fix the date of a cumulative injury for the purpose of determining which of the employer's insurance carriers was responsible for providing coverage. *See Franklin v. Blake Realty Co.,* H & AS No. 84–26, OWC No. 25856 (Aug. 18, 1985). But four years later, in 1989, this court used the third of the above formulations, that is, the date the employee became aware of, or through due diligence should have been aware of, a connection between the symptoms and employment, to determine whether a case of gradual hearing loss should be covered under the WCA or its precursor, the Longshoreman's and Harbor Workers' Compensation Act. *Railco Multi–Constr. Co. v. Gardner,* 564 A.2d 1167 (D.C.1989). *King* cautioned, however, that both of these cases preceded the 1991 amendments, and neither addressed the precise question of fixing the time of a cumulative injury for jurisdictional purposes. 742 A.2d at 472. Moreover, *Railco,* while citing *Blake Realty* as having adopted the manifestation rule for cumulative traumatic injury, employed a different version of the rule without further comment. Thus, the court concluded that "we do not think [*Blake Realty* and *Railco* ] definitively resolve the question ... of how to fix the time of a cumulative traumatic injury for purposes of determining under D.C.Code § [32–1503(a) ] whether the inju-

ry occurred in the District or outside the District." *Id.*

In the case now before us, the Compensation Order adopted by the Board applied the test from *Blake Realty,* in which the injury is considered to have been manifested on (1) the date when the employee first seeks medical attention for his painful symptoms, whether or not he ceases work or (2) the date of disability, whichever comes first.[3] (Comp. Order at 3.) Finding that petitioner was not disabled, the ALJ therefore held that the relevant date was the date when petitioner Smith first sought medical attention, which was January 9, 2001, and his primary care physician diagnosed him with carpal tunnel syndrome. (*Id.* at 3–4.) Since the ALJ also found that petitioner was employed by respondent in Maryland on January 9, 2001, he held the manifestation rule necessitated the application of § 32–1503(a)(2), the jurisdictional provisions relating to injuries occurring outside the District. (*Id.* at 4.) Applying the *Hughes* test to the "localized principally" question, the ALJ found that "there is simply no qualitative and quantitative connection with the District of Columbia to confer any jurisdiction on the District."

The question thus becomes whether DOES, given the legal context in which the WCA operates, acted within the proper bounds of its discretion in applying that particular manifestation rule to the facts of this case. Petitioner claims that DOES "adopted a manifestation rule that de-

---

**3.** The ALJ cited *Jimenez v. District of Columbia Dep't of Employment Servs.,* 701 A.2d 837 (D.C.1997), as authority for this proposition. Nowhere, however, is this test mentioned in that decision. The question at issue in *Jimenez* was whether the claimant satisfied the statutory requirements for providing timely notice of his claim. In fixing the date of the claimant's cumulative traumatic injury for these purposes, this court held that the rele-

vant date was when the claimant first went to see his doctor for treatment of his symptoms and thereby became aware of the relationship between his medical condition and his employment. *Id.* at 839. It appears that the court considered the claimant's "aware[ness] of the relationship between his injuries and his employment," not the fact that he first sought medical attention on that particular date, as the decisive factor.

prives injured workers of the presumption of compensability" and therefore is "inconsistent with the statute, contrary to law and should be reversed." (Pet'r Br. 8.)[4] This claim, however, misconstrues the nature and function of the presumption.

### D. The WCA's Presumption of Compensability

■ The WCA expressly establishes a presumption of compensability:

> In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of evidence to the contrary:
>
> (1) That the claim comes within the provisions of this chapter;
>
> (2) That sufficient notice of such claim has been given;
>
> (3) That the injury was not occasioned solely by the intoxication of the employee and
>
> (4) That the injury was not occasioned by the willful intention of the injured employee to injure or kill himself or another.

D.C.Code § 32–1521(1)–(4) (2001). The purpose of this section is "to 'advance the humanitarian goal of the statute and to provide compensation to employees for work-related disabilities reasonably expeditiously, even in arguable cases.'" *Mexicano v. District of Columbia Dep't of Employment Servs.*, 806 A.2d 198, 204 (D.C.

2002) (quoting *Brown v. District of Columbia Dep't of Employment Servs.*, 700 A.2d 787, 791 (D.C.1997)). Thus, "doubts about law or facts are generally to be resolved in the employee's favor." *Safeway Stores, Inc. v. District of Columbia Dep't of Employment Servs.*, 832 A.2d 1267, 1271 (2003) (citations omitted).

■ The case law interpreting § 32–1521(1), that is, the presumption that a claim comes within the WCA, however, makes clear that the provision was designed to establish a *causal* presumption between the claimant's injury and employment.[5] The presumption then operates to shift the burden to the employer to disprove the connection between the worker's injury and employment:

> To benefit from the statutory presumption, the employee need only show some evidence of a disability and a work-related event or activity which has the *potential* of resulting in or contributing to the disability. Such a showing effectuates the presumption, which operates to establish a causal connection between the disability and the work-related event, activity, or requirement, and shifts the burden of production to the employer to produce substantial evidence demonstrating that the disability did not arise out of and in the course of employment. The statutory presumption may be dispelled by circumstantial evidence specif-

---

4. While petitioner concedes that the manifestation rule should govern his case, he does not suggest that this court or DOES adopt any specific formulation of the rule. Indeed, the cases he cites in support of his argument employ different versions of the manifestation rule. Significantly, none of them employ a rule under which his *own* case would be compensable.

5. *See, e.g., Washington Vista Hotel v. District of Columbia Dep't of Employment Servs.*, 721 A.2d 574, 579 (D.C.1998) ("The presumption 'operates to establish a causal connection be-

tween the disability and the work-related event.'" (quoting *Baker v. District of Columbia Dep't of Employment Servs.*, 611 A.2d 548, 550 (D.C.1992))); *Murray v. District of Columbia Dep't of Employment Servs.*, 765 A.2d 980, 983 (D.C.2001) (citing *Ferreira v. District of Columbia Dep't of Employment Servs.*, 531 A.2d 651, 655 (D.C.1987)) (same); *(Washington Hosp. Ctr. v. District of Columbia Dep't of Employment Servs.*, 746 A.2d 278, 281 (D.C. 2000)) (citing *Brown v. District of Columbia Dep't of Employment Servs.*, 700 A.2d 787, 791 (D.C.1997)) (same).

ic and comprehensive enough to sever the potential connection between a particular injury and a job-related event. *Mexicano, supra,* 806 A.2d. at 204 (internal quotation marks and citations omitted). Should the employer succeed in dispelling the statutory presumption, the burden then shifts back to the claimant to show, by a preponderance of evidence, that the injury was in fact causally related to the petitioner's work. *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Employment Servs.,* 827 A.2d 35, 40 (D.C.2003).

Petitioner cites *Brown v. District of Columbia Dep't of Employment Servs.,* 700 A.2d 787 (D.C.1997), as "extend[ing] this presumption to questions of jurisdiction," but he misapprehends *Brown's* holding. Brown was a bus driver who injured his back three specific times during the course of his employment. *Brown, supra,* 700 A.2d at 789–90. The first two injuries occurred in the District; the last one in Virginia. *Id.* at 794. Following the third injury, Brown applied for workers' compensation in the District and was denied benefits on jurisdictional grounds. *Id.* at 789–90. The hearing examiner and the Director of DOES found that Brown had recovered completely from the first injury, that the injury that resulted in his seeking compensation was unrelated to that first injury, and that because the third injury occurred in Virginia, it was outside the jurisdiction of DOES. *Id.* at 790–91. Noting that "a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury," *id.* at 792 (internal quotation marks omitted), this court held that DOES had failed adequately to consider the earlier injuries as aggravating factors with respect to the third injury and reversed the decision. The court emphasized that an employment injury need have

"ar[isen] only in part from the employment" to be compensable under the District's statute. *Id.* at 792. The court added:

> In this case, because of the jurisdictional problem, that would mean that Brown would have to show that the injury occurred, in part, during the course of his employment in the District. In determining whether the injury arose in part out of, and in the course of, his employment as a bus driver in the District, the agency was required to apply the presumption of compensability.

*Id.* Thus, *Brown* reversed the DOES decision denying benefits because of its failure to apply the presumption to the issue of causality. It concluded that the misapplication of the presumption on the issue of causality had led to what the court concluded was an erroneous finding of no jurisdiction, and ruled that it "must overturn the jurisdictional determination." *Id.* at 794. Contrary to petitioner's argument, *Brown* did not apply the presumption to the issue of jurisdiction, but rather to the issue of compensability.

Significantly, *King, supra,* 742 A.2d at 460, in its extensive discussion of the precedents dealing with time of injury in aggravation and cumulative trauma cases, does not once mention *Brown,* although the latter case was decided two years earlier. This makes sense, as the connection between one disabling injury and another is a wholly different inquiry than identifying the moment in time when an innumerable series of minor insults—none an injurious occasion in itself—finally add up to a compensable injury.

## E. The Controlling Effect of Agency Prerogative and Prior Practice

In remanding the case to DOES to select the appropriate rule to govern juris-

dictional determinations in cumulative trauma cases, the *King* court emphasized the deference this court normally owes an agency's decision about how to interpret its own statute:

> Ordinarily, ... this court will not attempt to interpret the agency's statute until the agency itself has done so. Instead, we will remand to permit the agency to engage in the necessary analysis of the legislation it is charged with carrying out. In particular, a dispute over the *coverage* of the law—such as we have in the case now before us—is quintessentially a decision for the [agency] to make in the first instance, involving, as it does, a situation where an agency is delegated broad authority to administer a statutory scheme.

*King, supra,* 742 A.2d at 466 (internal quotation marks and citations omitted) (emphasis added). *See generally Chevron U.S.A., Inc. v. Natural Res. Def. Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Moreover, this deference continues in any subsequent review of the agency's resolution of the matter:

> An agency decision must not be disturbed unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.... This deference extends to matters of statutory construction, relenting only where the director's interpretation of the Act is unreasonable in light of prevailing law,

inconsistent with the statute as a whole, or plainly erroneous.

*Orius, supra,* 857 A.2d at 1065.

In rendering its decision, DOES did no more than accept the invitation that this court extended in *King* to resolve the issue of fixing the time of injury in cases of cumulative trauma. It closely adhered to the court's suggested guidelines and selected a manifestation rule from among the several discussed in that decision. We have located only one other DOES decision that squarely purports to apply *King's* jurisdictional guidelines for cumulative traumatic injuries: *LeMay v. Sears, Roebuck & Co.,* H & AS No. 99–224 A, OWC No. Unknown, 2000 DC Wrk. Comp. LEXIS 14 (Jan. 21, 2000). In that case, the agency, while recognizing that several versions of the manifestation rule exist, held that "the applicable time of injury is the date on which claimant sought medical attention for that specific ... problem." *Id.* at *11. This variant is simply the latter half of the *Blake Realty* two-step inquiry that DOES applied to the petitioner's circumstances.

Moreover, the WCA also requires the identification of a specific date of injury for purposes of determining whether timely notice of the injury was provided and whether the claim was timely filed. *See* D.C.Code §§ 32–1513(a)–1514 (a) (2001). Dozens of DOES decisions, both before and after *King,* have applied the *Blake Realty* two-step inquiry to fix the time of cumulative traumatic injury in these contexts.[6] Under these circumstances, the

---

**6.** *See, e.g., Bagbonon v. Africare,* H & AS No. 03–340, OWC No. 579350 (Nov. 1, 2005); *Broadus v. Catholic Univ. of Am.,* H & AS No. 00–476C, OWC No. 546408 (Jan. 24, 2005); *Eason v. Center Radiology,* H & AS No. 04–156, OWC No. 590269 (Nov. 1, 2005); *Ortega v. Interlog,* H & AS No. 04–156, OWC No. 590269 (June 23, 2004); *Watson v. Worldwide Sec. Serv.* H & AS No. 03–189, OWC No. 583281 (June 27, 2003); *Sams v. Schindler Elevator,* H & AS No. 02–470, OWC No. Un-

known (March 26, 2003); *Perez v. Morgan's, Inc.,* H & AS No. 02–119, OWC No. 571217 (Nov. 27, 2002); *Square v. Holiday Inn,* H & AS No. 02–042, OWC No. 563930 (April 24, 2002); *Thorton v. Washington Metro. Area Transit Auth.,* H & AS No. 02–018, OWC No. 561768 (Feb. 20, 2002); *Lambert v. Saul's Lithograph Co.,* H & AS No. 01–335, OWC No. 557667 (Oct. 16, 2001); *McNeal v. Washington Post,* H & AS No. 99–230, OWC No. 553998 (Nov. 2, 2002); *Thompson v. Sodexho*

agency's decision can hardly been deemed arbitrary, capricious, an abuse of discretion, unreasonable, or plainly erroneous. *See Orius, supra,* 857 A.2d at 1065. Thus, the decision and order of the Compensation Review Board is accordingly

*Affirmed.*

*Marriot,* H & AS No. 99–25, OWC No. 532065 (June. 5, 2000); *Sullivan v. Washington Hosp. Ctr.,* H & AS No. 97–222, OWC No. 501307, 501788 (Oct. 25, 2002); *Kutzera v. Safeway Stores,* H & AS No. 97–303A, OWC No. 512008 (Feb. 12, 1999); *Knight v. Bell Atlantic Commc'n & Constr. Serv., Inc.,* H & AS No. 98–302, OWC No. 525708 (Oct. 30, 1998); *Davis–White v. Washington Metro. Area. Transit Auth.,* H & AS No. 98–128, OWC No. Unknown (June 2, 1998); *Edwards v. Safeway Stores,* H & AS No. 97–195A, OWC No. 505404 (March 24, 1998); *Robinson v. Bell Atlantic,* H & AS No. 96–204, OWC No. 294536 (Aug. 20, 1996); *McCord v. Covington & Burling,* H & AS No. 95–560, OWC No. 250949 (July 1, 1996).